UNITED STATES of America, Appellee,

v.

Warren KING, Appellant.

No. 77–1180.

United States Court of Appeals,
Fourth Circuit.

Argued July 18, 1978.
Decided Sept. 22, 1978.

Michael Schatzow, Asst. Federal Public Defender, Baltimore, Md. (Charles G. Bernstein, Federal Public Defender, Baltimore, Md., on brief), for appellant.

Daniel F. Goldstein, Asst. U. S. Atty., Baltimore, Md., for appellee.

Before BOREMAN, Senior Circuit Judge, and WINTER and HALL, Circuit Judges.

BOREMAN, Senior Circuit Judge:

Warren King was convicted by a jury of two counts of kidnapping, 18 U.S.C. § 1201, after a bifurcated trial in which the jury first found him guilty of the substantive offenses and then determined that King was not insane at the time of his commission of the charged offenses.

The evidence disclosed that King kidnapped James Krouch in the District of Columbia and forced him to drive to Maryland where he took Krouch's car, leaving Krouch bound and gagged in a wooded area near a road. King next broke into the home of one Jay Disbrow in Havre de Grace, Maryland, where he tied up Disbrow's wife and children and then forced Disbrow to drive him to New Jersey where he released him unharmed and took his car. At trial Krouch and Mr. and Mrs. Disbrow all positively identified King as their assailant-kidnapper. Also there was evidence that King's Florida driver's license was found in Krouch's car and King's fingerprints were found in the Disbrow home.

At a pretrial hearing King told the judge that he did not want to have his court-appointed counsel represent him and insisted on representing himself. The judge engaged in a lengthy colloquy with King in an attempt to dissuade him from self-representation. He warned King of the seriousness of the charges, the potential penalty, the advantages of legal training and the likelihood of complex legal issues arising at trial. Nevertheless, even after consulting with his court-appointed attorney, King insisted on representing himself. The judge ordered court-appointed counsel to stay in the courtroom with King throughout trial, to give advice if necessary, and to take over the defense if King should so desire.[1]

The court also decided, after a suggestion by government counsel, that King's trial should be bifurcated on the issues of guilt and insanity. During *voir dire* King's behavior became so bizarre[2] that the judge informed the prospective jurors that the defendant's mental competence would be an issue later in the trial:

> that is to say, there will first be a trial as to the question of defendant's guilt or innocence of the charges in the indictment, that is whether or not he did the acts with which he has been charged. Then only if a guilty verdict is returned will there be a second trial which would follow immediately thereafter on the question of whether or not the Defendant was or was not legally sane at the time of the commission of the acts; that is, whether he can be held responsible for his acts if a finding of guilt is returned.

The judge again mentioned the bifurcation of issues during his instructions to the jury at the end of the first stage of the trial.

On appeal King contends that the judge erred in: (1) failing to conduct an adequate inquiry into his waiver of the right to counsel and (2) informing the jury of the insanity issue during the first phase of the bifurcated trial.

King argues that the judge did not question him adequately to determine whether he was literate, competent and under-

1. During the first two days of trial, King and his court-appointed attorney shared responsibility for representing the defense. On the third day, however, at King's request, court-appointed counsel completely took over and represented King for the rest of the trial.

2. Throughout the proceedings King behaved in a disruptive and disrespectful manner. This behavior included: clapping his hands, laugh-

ing, whistling, tearing apart trial exhibits and attempting to take off his clothes. In the afternoon of the third day of trial King's disruption of the proceedings forced the judge to order him removed from the courtroom. King refused to return to the courtroom unless the judge apologized to him and he voluntarily absented himself from the remainder of the trial.

standing of his rights. He contends that a "penetrating and comprehensive examination" must be conducted to determine a defendant's educational background, age and general capabilities before a judge can determine that a defendant's waiver of his right to counsel is knowing and intelligent. *United States v. Townes*, 371 F.2d 930 (4 Cir. 1966). Because the judge asked him about his educational background and not about his age or general capabilities, King argues that the judge did not develop a sufficient factual basis for determining that defendant's waiver of counsel was knowing and intelligent within the meaning of *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■■■■ While it is incumbent upon the trial court to determine that a defendant's waiver of his right to counsel is knowing and intelligent, no particular form of interrogation is required. *Townes, supra* at 934. The court must make the defendant aware of the "dangers and disadvantages of self-representation," so that the defendant "knows what he is doing and his choice is made with his eyes open." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 561 (1975). Thus, the court must assure itself that the defendant knows the charges against him, the possible punishment and the manner in which an attorney can be of assistance. *Townes, supra* at 933; *Aiken v. United States*, 296 F.2d 604 (4 Cir. 1961). The defendant must be made aware that he will be on his own in a complex area where experience and professional training are greatly to be desired. *United States v. Gillings*, 568 F.2d 1307 (9 Cir. 1978); *Stepp v. Estelle*, 524 F.2d 447 (5 Cir. 1975).

■■■ Even though the judge in the instant case did not delve deeply into the educational background, age and general capabilities of the accused as *suggested* in *Townes*,[3] his explanation of the dangers of self-representation informed King of the

crucial considerations necessary for a knowing and intelligent waiver of counsel and defendant's responses indicate that he understood these dangers and that his choice was made "with his eyes open." In addition, King was not strictly held to his waiver of counsel. He was allowed to have a hybrid representation in which he used court-appointed counsel to argue jury instructions, to cross-examine certain witnesses and to present arguments to the jury. From our examination of the record as a whole we find no involuntary deprivation of a constitutional right. *See United States v. Sacco*, 571 F.2d 791, 793 (4 Cir. 1978).

King argues that the judge erred in informing the jury during the first phase of trial that the trial would be bifurcated on the issues of guilt and insanity. Government counsel argues that it was necessary to inform the jury of the bifurcated nature of the proceedings because of the defendant's bizarre behavior; that the court did not want the jury to consider defendant's courtroom behavior in determining whether he was guilty of the substantive offenses; therefore, the judge informed the jury that the question of defendant's sanity would be submitted for consideration in a later stage of the trial if the jury found defendant guilty of the charged offenses.

■■■ A defendant has no right to disregard the dignity, order and decorum of judicial proceedings. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Furthermore, the conduct of a bifurcated trial is to be determined by the trial judge in the exercise of his sound discretion:

> The court not only has broad discretion in considering bifurcation, but also in *prescribing its procedure, the form of the charge and submission of the questions to the jury*, the admissibility of evidence in each stage, and even the impaneling of a second jury to hear the second stage if this appears necessary to eliminate prejudice. (Emphasis added)

---

3. In *Townes*, the defendant waived his right to counsel and tendered guilty pleas to a two-count indictment charging him with bank robbery. In that case, the judge not only had to determine that defendant voluntarily waived his right to counsel, but also that defendant competently and intelligently entered his guilty pleas.

*United States v. Greene,* 160 U.S.App.D.C. 21, 33, 489 F.2d 1145, 1157 (1973), *quoting Holmes v. United States,* 124 U.S.App.D.C. 152, 154, 363 F.2d 281, 283 (1966).

In the instant case the judge had substantial reason to inform the jury of the bifurcated nature of the proceedings. The record reflects that the jurors were possibly confused and concerned about the defendant's courtroom behavior. During *voir dire* one prospective juror told the court that her observation of the defendant led her to believe that he was not "emotionally stable" and that she felt he should not be on trial. The judge's decision to inform the jury that they could at some later point consider the issue of defendant's mental competence at the time he committed the acts as alleged was entirely justified under the circumstances and we conclude that there was no abuse of discretion.

Accordingly, the judgment of the district court is affirmed.

*Affirmed.*