966 F.2d 1441
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jari BULLOCK, Petitioner-Appellant,
v.
Charles E. THOMPSON; Mary Sue Terry, Attorney General of
Virginia, Respondents-Appellees.
 No. 90-6923.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 8, 1992
Decided: June 22, 1992
 
 Argued: Robert Godfrey, Gerald T. Zerkin & Associates, Richmond, Virginia, for Appellant.
 John H. McLees, Jr., Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellees.
 On Brief: Gerald T. Zerkin, Kelley H. Brandt, Gerald T. Zerkin & Associates, Richmond, Virginia, for Appellant.
 Mary Sue Terry, Attorney General of Virginia, Office of the Attorney General, Richmond, Virginia, for Appellees.
 Before PHILLIPS and NIEMEYER, Circuit Judges, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellant, Jari Bullock, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988) in the Federal District Court for the Eastern District of Virginia. In his complaint appellant claimed, inter alia, that his sentence was illegal because: (1) he was not represented by counsel at trial; (2) he was not properly advised of his right to a court appointed attorney; and (3) he had not knowingly and intelligently waived his Sixth Amendment right to counsel. After a hearing on the above issues where the district court received both testimonial and documentary evidence, the lower court dismissed appellant's claim. There being no error in the district court's determination, we affirm.
 
 I.
 
 2
 In April 1985, after appellant had accumulated several convictions for traffic violations, the Virginia State Court adjudged appellant an habitual offender, pursuant to Va. Code Ann. § 46.2-351 (Michie 1991).[1] On September 30, 1987, the state charged appellant with driving after having been adjudged an habitual offender in violation of Va. Code Ann. § 46.2-357 (Michie 1991),[2] a felony under Virginia state law. At a preliminary hearing on the charge held in Virginia General District Court, Neil Kuchinsky ("Kuchinsky") represented appellant as his retained counsel.
 
 
 3
 Despite no longer being retained by appellant, Kuchinsky appeared at docket call in the Circuit Court on behalf of appellant on January 18, 1988. There, Kuchinsky informed the court that appellant had advised him by telephone that he wanted to represent himself in the matter. Addressing appellant directly, the court informed him of the charge against him and the potential range of penalties he faced and ascertained that Kuchinsky continued to represent him with regard to that charge. When the court inquired of appellant if he wished to represent himself, appellant replied, "Yes, sir." (J.A. 5). In response to further inquiries from the court, appellant stated that he had been charged with a felony ten or eleven years ago and had been represented by retained counsel at that time.[3]
 
 
 4
 Soon thereafter, the court carefully and at length warned appellant about the pitfalls of self-representation in a felony case. The court concluded its warning, "If you want to do that, that's entirely up to you." (J.A. 9). Appellant responded, "Yes, I want to represent myself." Id. The court again inquired,"That's what you want to do is represent yourself?" Id. Appellant nodded his head in the affirmative. Appellant then demanded a jury trial, and the court discussed the sentencing options in a jury trial as opposed to a bench trial.
 
 
 5
 The court also addressed Kuchinsky, in appellant's presence, and Kuchinsky indicated that appellant had retained him for the district court level only. The court asked appellant again,"And, you do not wish Mr. Kuchinsky to represent you further, is that correct?" (J.A. 10). Appellant nodded his head in the affirmative. The trial court did not ask appellant why he no longer wanted Kuchinsky as his attorney, whether he wanted to retain other counsel, whether he was financially able to retain other counsel, or whether he knew that he had the right to court-appointed counsel at no immediate expense if he could not retain his own counsel.
 
 
 6
 At appellant's trial, the court again reminded him of its earlier warnings concerning self-representation and asked him in light of those warnings if he wished to continue with the trial without an attorney. Appellant stated that he did. The jury convicted appellant and recommended the maximum five-year sentence which the court later imposed.
 
 
 7
 The federal district court in the habeas proceeding below did not issue written findings of fact and conclusions of law on this issue but instead delivered them from the bench. The federal district court found that Kuchinsky represented appellant in the State General District Court and then stated that "the record reflects" that appellant "appeared together with Kuchinsky" at the docket call in the State Circuit Court. (J.A. 175-76). The district court further found that "the [state trial] Court bent over backwards explaining to Mr. Bullock the dangers of proceeding without an attorney." (J.A. 176).
 
 
 8
 The federal district court reached a conclusion of law that appellant "had an attorney when he appeared before the Circuit Court" and that appellant fired his attorney for the sole reason that he wanted to represent himself." (J.A. 177-78). In response to the fact that the trial court failed to inquire whether appellant was indigent and whether he knew he had the right to appointed counsel, the federal district court stated, "I have to agree that in this day and age it is utterly impossible to believe somebody doesn't know they have that right." (J.A. 179). The court went on to say:
 
 
 9
 But this gentleman did have prior experience. And that's one of the things you consider in determining whether or not he knowingly waived the right. Did he have prior experience with Court? What was his background? He'd been in Court before. He'd asked for and received Court appointed counsel. And in this case, he didn't want counsel. That's the long and short of it.
 
 
 10
 I find that Mr. Bullock knowingly and voluntarily waived his right to counsel at the time he appeared before[the Circuit Court] and at the time that he was tried.
 
 
 11
 (J.A. 179-80). This appeal followed.
 
 II.
 
 12
 The essential issue presented by this case is whether the district court erred in determining that appellant had made a knowing and intelligent waiver of counsel when the state trial court did not specifically inform appellant of his right to court-appointed counsel after appellant had dismissed his retained attorney and declared that he wanted to represent himself. Such an inquiry is a mixed question of law and fact involving "application of constitutional principles to the facts as found." Brewer v. Williams, 430 U.S. 387, 401-04 (1977). Accordingly, as this Court has the entire record before it, we will review the district court's application of the law to the facts de novo.
 
 
 13
 The district court held that appellant knowingly and voluntarily waived his right to counsel at the time he appeared before the State Circuit Court at his preliminary hearing and at the time that he was tried. Appellant takes exception to this ruling and alleges that, because the State Circuit Court did not inquire into appellant's financial status and did not specifically explain to appellant that the state would provide him with an attorney if he could not afford one, he did not knowingly and intelligently waive his right to counsel.
 
 
 14
 Appellant's arguments are twofold. First, he contends that the trial court did not conduct an inquiry such that his waiver rose to the minimum level of a knowing and intelligent waiver required by the law in this Circuit. Second, while acknowledging that this Circuit does not require a particular form of inquiry on the record to support the determination that a waiver is knowing and intelligent, appellant argues that courts in other jurisdictions do employ more stringent requirements and that it would behoove this Court to reexamine its precedent and institute a new procedural rule requiring trial courts to make certain, specific, minimal inquiries before allowing them to make a finding of a knowing and intelligent waiver. See Craig v. Beto, 458 F.2d 1131, 1136 (5th Cir. 1972) ("[if defendant] did not know about his right to appointed counsel and was not clearly advised of that right, then there could not possibly be an intentional relinquishment or waiver of that right"); Smith v. Lane, 426 F.2d 767 (7th Cir. 1970) ("[a defendant's right to counsel] can not be deemed waived if the accused was not informed of his right to counsel even though he can not afford to pay"); United States v. Silkwood, 893 F.2d 245, 248 (10th Cir. 1989) ("[f]or a waiver to be voluntary, the trial court must inquire into the reasons for the defendant's dissatisfaction with his counsel....").
 
 
 15
 The government maintains that the trial court did a more than adequate job of establishing that appellant's waiver of his right to counsel was knowing and intelligent under the current law in this Circuit. Additionally, the government agrees that appellant's second argument is contrary to the established law in this Circuit. The government contends, however, that even if this Court was inclined to change the requirements for establishing a knowing and intelligent waiver in this Circuit, this Court should not do so because such an action would exceed the scope of the federal habeas corpus proceeding.
 
 III.
 
 16
 The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This safeguard is "necessary to insure fundamental human rights of life and liberty." Johnson v. Zerbst, 304 U.S. 458, 462 (1938). The Sixth Amendment is binding upon the states through the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335 (1963); McCoy v. Court of Appeals, 486 U.S. 429, 435 (1988). Further, a defendant who is indigent "has the absolute right to appointed counsel." United States v. Gillis, 773 F.2d 549, 559 (4th Cir. 1985).
 
 
 17
 "[A] waiver of the Sixth Amendment right to counsel is valid only when it reflects 'an intentional relinquishment or abandonment of a known right or privilege.' " Patterson v. Illinois, 487 U.S. 285, 292 (1988) (quoting from Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). The key inquiry in such a case is whether "the accused, who waived his Sixth Amendment rights ... [was] made sufficiently aware of his right to have counsel ... and of the possible consequences of a decision to forgo the aid of counsel." Id.
 
 
 18
 In a given case, the determination of whether there has been an intelligent waiver of the right to counsel depends upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. Johnson, 304 U.S. at 464. This Court has implemented the teaching of Johnson in a line of cases including United States v. Gallop, 838 F.2d 105 (4th Cir. 1988); United States v. King, 582 F.2d 888 (4th Cir. 1978); Townes v. United States, 371 F.2d 930 (4th Cir. 1966), and; Aiken v. United States, 296 F.2d 604 (4th Cir. 1961). In so doing, this Court did not establish rigid rules for determining the validity of a defendant's alleged waiver of his Sixth Amendment right to counsel, but instead created broader guidelines for such a determination.
 
 
 19
 For example, in Aiken, this Court held that the trial court should inform the defendant of the charges against him, the maximum sentence he faced for those charges, and inquire as to whether anyone induced the proffered waiver through threats of harm or promises of leniency. Id. at 607. Further, the Aiken panel stated that, in a collateral attack on the conviction, nonconformance with the above mentioned standard was not immediately fatal, but that the petitioner also bore the burden of proving that he did not understand his rights. Id.
 
 
 20
 In Townes, this Court added that the trial court should also develop on the record the defendant's educational background, age, and general capability. Townes, 371 F.2d at 934. Further, the Court reiterated the holding in Aiken that this suggested interrogation was "simply a guide ... and not a rigid ritual to be slavishly followed." Id.
 
 
 21
 In King, this Court held that an appellant's waiver of counsel met constitutional standards because the trial court had carefully warned the appellant of the dangers of self-representation and of the charges and penalties he faced. King, 582 F.2d at 890.
 
 
 22
 The above cases clearly indicate that when a defendant seeks to waive counsel and represent himself, the failure of the trial court to ask whether his choice was precipitated by financial difficulties and to advise him of his right to court-appointed counsel does not vitiate his waiver of counsel. Further, where the record indicates that there was "affirmative acquiescence" in a defendant's waiver of his right to counsel, that defendant must bear the burden of proving that the waiver was not, in fact, knowing, intelligent, or voluntary. Carnley v. Cochran, 369 U.S. 506, 516-17 (1962).
 
 
 23
 In the instant case, the district court reviewed the evidence and found "that Mr. Bullock knowingly and voluntarily waived his right to counsel at the time he appeared before [the Circuit Court] and at the time that he was tried." (J.A. 179-80). The record reflects that the State Circuit Court made certain that appellant understood the charges and possible penalties against him and repeatedly and extensively warned appellant about the perils associated with self-representation. In response, appellant answered all of the judge's questions clearly and unequivocally. Further, appellant voiced no complaint against his attorney, did not request the opportunity to retain other counsel, did not ask the court to appoint counsel, and did not state that he could no longer afford legal representation. Instead, appellant stated repeatedly that he wanted to represent himself. Given the State Circuit Court's strenuous and lengthy warnings about the perils of selfrepresentation, appellant's prior experience with the judicial system and the complete absence of credible evidence to move this Court to reverse the district court's determination, we affirm.
 
 
 24
 Appellant's second argument, that this Court should adopt a new procedural rule requiring district courts to make certain, specific, minimal inquiries before allowing them to make a finding of a knowing and intelligent waiver of counsel, is unpersuasive. As discussed above, the law in this Circuit is clear that trial courts should "determine the sufficiency of the waiver [of counsel] from the record as a whole rather than from a formalistic, deliberate, and searching inquiry." Gallop, 838 F.2d at 110. See also King, 582 F.2d at 890; Townes, 371 F.2d at 934; and Aiken, 296 F.2d at 607. To accept appellant's position would overrule established precedents that specifically repudiate appellant's bright-line approach. Accordingly, we decline to do so.
 
 
 25
 Therefore, there being no error in the district court's determination, the judgment of that court is hereby
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 At the time of the offense, the statute was contained in Va. Code Ann. § 46.1-387.2 (Michie 1985)
 
 
 [2]
 At the time of the offense, the statute was contained in Va. Code Ann. § 46.1-387.8 (Michie 1987)
 
 
 [3]
 Appellant was in fact represented by court-appointed counsel on this felony charge. Appellant claimed, however, that he did not recall asking for an appointed attorney, but that one just appeared. However, appellant admitted that his signature appeared on the second page of a document requesting court-appointed counsel in the previous felony case