983 F.2d 1058
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Emanuel BROWN, Defendant-Appellant.
 No. 91-5088.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 28, 1992
Decided: January 6, 1993
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. N. Carlton Tilley, Jr., District Judge. (CR-90-240-G)
 ARGUED: Susan Hayes, Greensboro, North Carolina, for Appellant.
 John Warren Stone, Jr., Assistant United States Attorney, Douglas Cannon, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 ON BRIEF: Robert H. Edmunds, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 Affirmed.
 Before WIDENER, PHILLIPS, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Emanuel Brown was convicted of aiding and abetting: (1) bank robbery, 18 U.S.C. § 2113(a) (1988), (2) armed bank robbery, id. § 2113(d), and (3) use of a firearm during a crime of violence, id. § 924(c)(1), in connection with the theft of $371,000 from the Bessemer Avenue branch of the Wachovia Bank and Trust in Greensboro, North Carolina (the Bank). The district court gave Brown consecutive sentences of 270 months on the armed bank robbery charge and 60 months on the firearms charge. In this appeal, Brown challenges his convictions and sentence for armed bank robbery, and raises numerous issues for our consideration. Finding no reversible error, we affirm both Brown's convictions and his sentence.
 
 I.
 
 2
 Brown masterminded a plan to rob the Bank using information from a Bank employee. His accomplices in this crime were Neil Harewood, Charles Walker, and a man known as "Nawny."
 
 
 3
 On September 11, 1990, Brown, Harewood, Walker, and Nawny drove from Philadelphia, Pennsylvania, to Durham, North Carolina, in Brown's Monte Carlo and Cadillac. Upon arrival in Durham, they used Brown's name to check into a Comfort Inn and rent a U-Haul truck, and they stole a Camaro from a nearby college. The men drove to Greensboro where they parked the Camaro and U-Haul near the Bank before returning to Durham in the Monte Carlo.
 
 
 4
 Brown drove the men into Greensboro on September 13th where he waited in the area, while Harewood and Walker ran into the Bank, stole $371,000, and drove away in the Camaro. They abandoned the Camaro nearby and entered the back of the U-Haul, which was driven by Nawny. Brown followed the U-Haul to the parking lot of a nearby mall where they transferred the money to Brown's Monte Carlo and threw away the Bank's money bags. Later at the Comfort Inn, Brown disposed of a gun stolen from a guard by Walker during the commission of the robbery. Brown then returned to Philadelphia with his portion of the robbery proceeds.
 
 
 5
 Following Brown's arrest and indictment, the district court appointed attorney Mathias Hunoval to represent Brown on these charges. Three weeks prior to trial, Brown moved to have Hunoval removed and to be allowed to proceed pro se. After a hearing on the matter, the district court granted the motion, but asked Hunoval to act as standby counsel during trial.
 
 II.
 
 6
 The first issue on appeal is whether the district court erred in not appointing substitute counsel in response to Brown's motion to remove Hunoval. As an initial matter, we note that Brown did not request substitute counsel-only that Hunoval be removed and that Brown be allowed to represent himself.
 
 
 7
 After the district court explained the dangers of proceeding pro se and encouraged Brown to change his mind, Brown suggested that the court could select substitute counsel from outside the jurisdiction. Brown refused to accept the representation of any lawyers from the area because he believed all area attorneys were in collusion with the United States Attorney's Office. Once the district judge explained that he only had authority to appoint counsel from a list of attorneys from within the jurisdiction, Brown formally waived his right to assistance of counsel.
 
 
 8
 Although the district court's Plan for Furnishing Representation and Services authorizes it to appoint counsel from a list of attorneys compiled in that jurisdiction, the Plan does not contain a provision authorizing the court to appoint counsel from a different jurisdiction. See Plan for Furnishing Representation and Services Pursuant to the Criminal Justice Act of 1964-United States District Court for the Middle District of North Carolina at 2-3 (July 13, 1987). Therefore, Brown's refusal to accept local counsel prevented the district court from appointing substitute counsel. Furthermore, the district court could not force upon Brown an attorney that he indicated he would not accept. See Faretta v. California, 422 U.S. 806, 817 (1975) (forcing an attorney on an unwilling defendant violates the defendant's right to self-representation).
 
 
 9
 Even if Brown's oral motion is construed as a request for substitute local counsel, Brown failed to establish good cause for the substitution. See United States v. Gallop, 838 F.2d 105, 108 (4th Cir.) (indigent defendant is not entitled to substitute court-appointed counsel unless he can demonstrate good cause, and failure to appoint substitute counsel may only be reversed for abuse of discretion), cert. denied, 487 U.S. 1211 (1988). None of Brown's complaints against Hunoval arise to the level of "good cause."[1] Furthermore, the record reveals that Brown's relationship with Hunoval at the time of the hearing had not deteriorated to the point that he could not receive an adequate defense from Hunoval.[2] See Gallop, 838 F.2d at 108. Thus, even if the district court had construed the motion as one for substitute counsel, failure to grant the motion would not be an abuse of discretion.
 
 III.
 
 10
 We next address whether Brown's waiver of counsel was knowing and intelligent. Id. at 109. A court must inform a defendant of the dangers of proceeding without counsel. Faretta v. California, 422 U.S. at 835. However, a district court is not required to perform any particular form of interrogation before it concludes that a defendant's waiver of counsel is knowing and intelligent. United States v. King, 582 F.2d 888, 890 (4th Cir. 1978).
 
 
 11
 On appeal, we determine "the sufficiency of the waiver from the record as a whole." Gallop, 838 F.2d at 110. However, this court has previously stated that
 
 
 12
 "[a]t a minimum the district court should, before permitting an accused to waive his right to counsel, explain the charges and possible punishments...." Aiken v. United States, 296 F.2d 604, 607 (4th Cir. 1961). The district judges also should "develop on the record the educational background, age and general capabilities of an accused, so that the ability of the accused to grasp, understand and decide is fully known" to the trial court and fully disclosed by the record. Townes v. United States, 371 F.2d 930, 934 (4th Cir. 1966), cert. denied, 387 U.S. 947, 87 S. Ct. 2083, 18 L.Ed.2d 1335 (1967).
 
 
 13
 Id. at 110 (ellipses in original). Failure to make such an inquiry, however, will not automatically result in a reversal. Id.
 
 
 14
 In this case, the district court informed Brown of the problems of proceeding pro se and extensively questioned Brown to ensure that he understood those dangers. Furthermore, the district court previously had explained to Brown the potential sentence he could receive should a jury find him guilty.
 
 
 15
 While the district court did not state Brown's formal education on the record, we do not believe that omission warrants reversal in this case. The transcript reveals that Brown understood the proceedings, freely communicated with the court, and prepared various motions himself for his trial. In addition, the district court noted that Brown previously represented himself in a state court prosecution. These facts establish that Brown made his decision "with eyes open." Faretta, 422 U.S. at 835 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)). Therefore, we hold that Brown's waiver of counsel was both knowing and intelligent.
 
 IV.
 
 16
 The next issue is whether the district court denied Brown effective assistance of counsel by appointing Hunoval as standby counsel to answer Brown's legal questions.
 
 
 17
 While a defendant has a right to proceed pro se or to be represented by counsel, he does not have a right to a hybrid representation consisting of himself and standby counsel. See Faretta, 422 U.S. at 835; United States v. Sacco, 571 F.2d 791, 793 (4th Cir.), cert. denied, 435 U.S. 999 (1978). A district court has discretion, however, to appoint standby counsel for a pro se defendant. See McKaskle v. Wiggins, 465 U.S. 168, 176 (1984).
 
 
 18
 Once a district court appoints standby counsel, it cannot permit counsel to interfere with the defendant's right to self-representation. Specifically, the court must be especially careful to prevent counsel from giving unsolicited assistance in the jury's presence because it may dispel the perception that the defendant is in charge of his own defense. Id. at 181. To protect against this harm, and to ensure that the trial proceeds in an orderly fashion, a district court can place reasonable limitations on the standby counsel's actions and the defendant's use of such counsel. United States v. Nivica, 887 F.2d 1110, 1121 (1st Cir. 1989), cert. denied, 494 U.S. 1005 (1990).
 
 
 19
 The district court limited Hunoval only once-when he repeatedly passed unsolicited cross-examination questions to Brown in the jury's presence. This was a reasonable limitation, necessary for the protection of Brown's rights and the orderly administration of justice. See McKaskle, 465 U.S. at 181.
 
 
 20
 Other than that one incident, the district court allowed Hunoval to participate in the trial in any manner requested by Brown, including examining witnesses and giving the closing argument. Moreover, the record is replete with examples of the district court encouraging Brown to seek assistance from Hunoval. If anything, we commend the district court's excellent handling of this difficult and awkward situation.
 
 V.
 
 21
 Next, we must determine whether the district court's upward departure from the presentence report's recommendation was erroneous under the Sentencing Guidelines. In deciding this issue, we must review the district court's decision to depart and the sentence imposed to determine if they were reasonable considering the factors outlined by the Sentencing Guidelines and the court's stated reasons. 18 U.S.C. § 3742(e)(3) (1988). In reaching this decision, however, we must accept the district court's findings of fact unless they are clearly erroneous and we must give due deference to the court's application of the Guidelines. Id. § 3742(e).
 
 
 22
 The district court granted the Government's motion for upward departure because it found that criminal history category III, as recommended in the presentence report, did not adequately reflect Brown's prior criminal activities. Specifically, the court found that credible testimony at trial and the sentencing hearing established by a preponderance of the evidence that Brown participated in four bank robberies in addition to the ones discussed in the presentence report and that he operated an illegal after hours drinking establishment. These findings, if not clearly erroneous, represent legitimate factors that will support an upward departure under the Sentencing Guidelines. United States Sentencing Commission, Guidelines Manual, § 4A1.3(3) (Nov. 1990) (court may consider other crimes committed by the defendant for which he was not convicted); see also United States v. Urrego-Linares, 879 F.2d 1234, 1238 (4th Cir.) (government need only demonstrate guilt by a preponderance of the evidence during the sentencing phase of a trial), cert. denied, 493 U.S. 943 (1989). Because we cannot say these findings were clearly erroneous, we hold that the district court's decision to depart was reasonable.
 
 
 23
 The district court used the guideline for career offenders as a guide in selecting Brown's sentence because it found that Brown's extensive criminal history bore a close resemblance to that of a career offender. See U.S.S.G. § 4B1.1. Using this guideline as a model, the court sentenced Brown in accordance with a criminal history category VI and a total offense level of 34. Id. (career offenders being sentenced for a crime with a statutory maximum of at least twenty-five years, such as armed bank robbery, must be sentenced at least at criminal history category VI and offense level 34).
 
 
 24
 We agree with the district court that it was reasonable to use the career offender guideline as a model in fashioning Brown's sentence. Brown's extensive criminal activities demonstrate a recidivist nature that is one of the hallmarks of a career offender. United States v. Bassil, 932 F.2d 342, 346 (4th Cir. 1991).
 
 
 25
 Brown contends, however, that the district court erred in departing directly to criminal history category VI without first explaining why categories IV and V were inadequate. In United States v. Rusher, 966 F.2d 868, 883 (4th Cir.), cert. denied, 113 S. Ct. 351 (1992), this court suggested an approach for district courts to use when granting motions for upward departure: address the next higher criminal history category and explain why it is inadequate before advancing to the next category. A district court, however, is not required to follow this procedure once it reasonably decides to sentence the defendant under the career offender guideline. United States v. Cash, No. 91-5869, slip op. at 7 (4th Cir. Dec. 14, 1992). In such a situation, "the district court may depart directly to the guideline range applicable to career offenders similar to the defendant." Id. Since we have already concluded that the district court reasonably sentenced Brown using the career offender guideline as a model, the court did not err in departing directly to criminal history category VI and Brown's sentence must be affirmed.[3]
 
 VI.
 
 26
 Brown raises nine other issues for our consideration.[4] After careful review of these issues, we conclude that none of them has any merit or at best constitute harmless error.
 
 VII.
 
 27
 For the reasons noted above, Brown's sentence and conviction are affirmed.
 
 AFFIRMED
 
 
 [1]
 See United States v. Robinson, 913 F.2d 712, 716 (9th Cir. 1990) (anger at counsel's failure to raise frivolous matters does not constitute good cause), cert. denied, 111 S. Ct. 1006 (1991); United States v. Rogers, 769 F.2d 1418, 1424 (9th Cir. 1985) (pessimistic prognosis of chances at trial is not grounds for change of counsel) (citing McKee v. Harris, 649 F.2d 927, 932 (2d Cir.), cert. denied, 456 U.S. 917 (1982)); Thomas v. Wainwright, 767 F.2d 738, 742 (11th Cir. 1985) (defendant's loss of confidence in attorney's ability adequately to represent him does not constitute good cause) (citing McKee, 649 F.2d 932), cert. denied, 475 U.S. 1031 (1986); United States v. Andrews, 754 F. Supp. 1195, 1197 (N.D. Ill. 1990) (disagreement over which motions should be filed does not constitute good cause)
 
 
 [2]
 The record does not support Brown's claim that his relationship with Hunoval was antagonistic at the time of the motions hearing. Although Hunoval referred to Brown as "Smoking Manny" in Emanuel Brown's Sentencing Memorandum-Response, conduct which we disapprove, this document was not filed until after the district court denied Brown's post-verdict motions
 
 
 [3]
 Because we affirm the district court's decision to sentence Brown in accordance with the career offender guideline, we need not address Brown's other challenges to his sentence. Assuming the presentence report contains erroneous increases in Brown's total offense level, based on the erroneous conclusions that Brown was an organizer of an enterprise containing at least five people and that he obstructed justice, those errors only increased Brown's offense level to 32. Once the district court decided to sentence Brown in accordance with the career offender guideline, however, it was required to increase Brown's offense level to 34. This automatic increase in his level, above the level recommended in his presentence report, makes any erroneous increases therein harmless
 
 
 [4]
 The final nine issues are: (1) whether the district court erred in admitting into evidence $67,000 found in Brown's home; (2) whether the district court erred in admitting testimony about Brown's involvement in a previous robbery of the Bank; (3) whether the Government lacked probable cause to arrest Brown; (4) whether the district court erred in not conducting an in camera hearing on the credibility of certain witnesses prior to allowing their testimony before the jury; (5) whether the district court denied Brown a speedy trial; (6) whether the district court erred in not holding a Franks hearing to determine if Agent Baker lied in an affidavit used to support Brown's arrest warrant; (7) whether the district court erred in not holding an evidentiary hearing on allegations of Government outrageous conduct; (8) whether the Government violated Brady by not giving Brown copies of two witnesses' grand jury testimony; and (9) whether the district court committed plain error in its jury instructions