**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-4886**

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

      v.

DAVID ISAAC PARKER, a/k/a David Green, a/k/a David Smith,
a/k/a Jay Smith,

               Defendant - Appellant.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  J.  Frederick Motz, Senior District
Judge.  (8:11-cr-00459-JFM-1)

Argued:  May 15, 2014          Decided:  June 16, 2014

Before WILKINSON and THACKER, Circuit Judges, and HAMILTON,
Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Michael Daniel Montemarano, MICHAEL D. MONTEMARANO, PA,
Columbia, Maryland, for Appellant.  Paul Nitze, OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON
BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore,
Maryland, Deborah A. Johnston, Assistant United States Attorney,
Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A federal grand jury returned a three-count second superseding indictment against Appellant David Isaac Parker ("Appellant") charging him with conspiracy to import cocaine in an amount greater than five kilograms, in violation of 21 U.S.C. §§ 960 and 963; importing more than 500 grams of cocaine, in violation of 21 U.S.C. § 960; and possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1). Following a jury trial, where Appellant served as his own counsel, Appellant was convicted of all three counts. On appeal, Appellant raises a single issue: whether the district court conducted a constitutionally adequate inquiry regarding Appellant's desire to serve as his own counsel.

Because Appellant's election to proceed pro se was clear and unequivocal, as well as knowing and intelligent, we conclude that the district court conducted a constitutionally adequate inquiry regarding Appellant's desire to serve as his own counsel. Therefore, we conclude the district court did not err in granting Appellant's request to waive counsel and proceed pro se. Accordingly, we affirm.

I.

Appellant was first arrested on July 20, 2011, when the United States Postal Service executed a controlled delivery of a package containing cocaine that was addressed to, and

2

accepted by, Appellant. Subsequent to his arrest, Appellant was charged in a sealed criminal complaint on July 26, 2011, followed by a sealed indictment on August 22, 2011, and a superseding indictment on November 2, 2011. Finally, on May 23, 2012, Appellant was charged in the second superseding indictment, the charging document upon which the trial ultimately proceeded.

Throughout the pendency of this case, Appellant had multiple court appearances in front of both the magistrate court and the district court, and had the benefit of both appointed and retained counsel. During these appearances, Appellant was repeatedly advised of his rights. For example, at an initial appearance in magistrate court on October 24, 2011, where Appellant was represented by retained counsel, the court engaged in a lengthy explanation with Appellant about his constitutional rights as well as the nature of the charges against him. During this colloquy, Appellant continually insisted that he did not understand even the most basic concepts. Appellant's assertions prompted the court to observe, "I think that [Appellant] is playing games with the [c]ourt." J.A. 26.[1] Shortly thereafter,

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

Appellant ultimately stated that he understood, but just did not agree.

> [APPELLANT]: I am reading the Indictment[;] I understand what you are saying. But as far as the wording on the Indictment I don't agree with.
>
> THE COURT: That is fair. Nothing wrong with you not agreeing with it, that is exactly where your Counsel wants you to be. Not a problem. But do you understand what they are claiming you have done wrong?
>
> (Pause)
>
> [APPELLANT]: Yes, I understand for the record on this paper what they are accusing me of, yes.

Id. at 28. Further, Appellant told the magistrate court that he had no mental condition, illness, or defect that affected his judgment.

Appellant appeared before the district court at a December 20, 2011 motions hearing to address a suppression motion filed by Appellant's retained counsel. At this hearing, Appellant's retained counsel represented to the court that Appellant wished to proceed pro se. According to counsel, Appellant desired to litigate motions he had previously filed pro se which presented a sovereign citizen defense. After denying those motions, the district court inquired at length of Appellant as to whether he wished to continue serving as his own counsel.

4

THE COURT: [Your attorney] has expressed on your behalf that you want to represent yourself in this matter. Is that true?

[APPELLANT]: Yes.

THE COURT: You understand that you have a right to be represented by counsel, and that these are legal issues in which counsel are trained to represent the client's interest, which would include, you know, moving to suppress any statements that were made or any evidence that was seized. Do you understand that?

[APPELLANT]: You're asking me do I comprehend? Yes.

. . .

[APPELLANT]: [My attorney] stated earlier that he would like to take a back seat and just be my advisor.

THE COURT: Is that, is that -- do you want him as standby counsel, then, essentially, to advise you, and have you represent yourself?

[APPELLANT]: Yes.

. . .

THE COURT: But, Mr. Parker, as I understand it, with the advice of [your attorney], the questions you want to ask, you want to ask them yourself and you want to pursue any motions that you deem appropriate, is that what I understand you want to do? Or do you want to have him ask the questions of the witnesses?

[APPELLANT]: If I can have more time to get myself prepared for that, I would like to do that myself.

5

THE COURT: We will postpone the hearing . . . . But the question is when we do have the hearing, when we do it, do you really want to put yourself in the position where you are asking the questions of the witnesses?

[APPELLANT]: Yes.

THE COURT: And assuming, which I have no idea because I haven't heard the evidence yet, but assuming I deny the motions, do you want to represent yourself at trial as well?

[APPELLANT]: Yes.

THE COURT: And you understand that by proceeding in this way, you are, although [your attorney] is there to advise you, I mean, there are certain, I mean, I'm not going to let you testify from the counsel table. I mean, if you want to testify, you're going to have to take the witness stand yourself and be subject to the penalties of perjury, if you choose to testify. Of course, you don't have to testify if you don't want to.
     But you understand that you can't essentially testify by asking questions of the witnesses. Do you understand that?

[APPELLANT]: I comprehend well.

J.A. 52-55. Per Appellant's request, the district ultimately appointed retained counsel to serve as standby counsel.

After Appellant advised the court that he was taking medication for bipolar disorder, the court ordered a competency evaluation. Following his competency evaluation, Appellant appeared before the district court again on April 27, 2012, for another motions hearing. Because Appellant's retained counsel,

6

now serving as his standby counsel, was extremely late, the court commenced the hearing with counsel, who was still a great distance from the courthouse, on the telephone. The court admonished counsel for his irresponsibility, and Appellant stated he no longer wished for retained counsel to serve as standby counsel.

The district court again confirmed with Appellant that he wanted to serve as his own counsel. After the court asked Appellant if he wished to continue to represent himself, Appellant responded, "I can't represent myself. I'm going to be myself." J.A. 62. Clearly frustrated, the court responded, "I don't know what I'm supposed to advise you. What am I supposed to advise him about representing himself?" Id. The court then engaged in an extensive colloquy with Appellant about his understanding of the nature of the charges against him and his desire to serve as his own counsel. Appellant again frustrated the matter by claiming he "comprehend[ed]" but did "not understand." Id. at 63. Appellant explained that "comprehend[ing]" means he "intelligently hear[s]" what is being said. Id. The court then explained to Appellant,

> THE COURT: You are facing a serious charge and you're subject to very serious penalties, including a $100 special assessment, which I don't think was mentioned. . . . That's trivial compared to the prison sentence you face. So whether you comprehend or you understand, the fact

7

of the matter is you've been examined and have been found competent to stand trial. And also, you had a lawyer, who I really don't think has been very good, to tell you the truth.

I don't know whether you're indigent or not, but I'll arrange to have counsel appointed to represent you, if you want.

I don't want any injustice done in this case. And I want you to understand that you are subject to a very serious charge, and you're subject to very serious penalties, and that this case is going to proceed in accordance with the law and in accordance with the Federal Rules of Criminal Procedure, which are not easy to understand in all respects, [and] the Federal Rules of Evidence.

If you want to proceed representing yourself, you have an absolute right to do so. I can't stop you. On the other hand, I think that -- my own judgment is you would be well advised to have a lawyer representing you.

Do you want to proceed with or without a lawyer?

[APPELLANT]: Without.

Id. at 64-65.

The court then proceeded to conduct a hearing on Appellant's suppression motion in which Appellant served as his own counsel and made many objections. After denying Appellant's suppression motion, the court again discussed Appellant's desire to serve as his own counsel:

[THE COURT:] As I say, if you want to represent yourself, you're absolutely free to do so and I am not going to do anything to prevent you from doing so. On the other hand, I want to make sure that your interests are properly represented. And I

8

> take it -- I don't know.  Do you still, do you want a lawyer or you don't want a lawyer?
>
> [APPELLANT]: No, I do not.

J.A. 91-92.  Appellant then confirmed several more times that he wished to serve as his own counsel.  Therefore, the district court found that Appellant "voluntarily decided to represent himself," stating,

> I make that finding.  I make it reluctantly because I want the defendant's rights to be protected.  But it could not be more clear that he wants to proceed pro se without representation of counsel or the assistance of standby counsel.  And I so find. . . . There's already been a competency evaluation.  We had the doctor examine Mr. Parker, and he found him competent to stand trial.  I can't do any more.

Id. at 94.[2]

On July 30, 2012, the first day of Appellant's trial, before empaneling the jury, the district court again engaged in a lengthy discussion with Appellant and his appointed standby counsel regarding Appellant's wishes to proceed pro se.  Despite having been through numerous colloquies on several occasions with the court, Appellant asserted that he did not "understand

---

[2] Although Appellant continually asserted at this hearing that he did not want standby counsel, new standby counsel was appointed to him and a notice of appearance for standby counsel was entered on June 12, 2012.

9

anything." J.A. 110. In response to his continued assertions, the court stated,

> We have a finding, because there were allegations, there were assertions made earlier in the proceedings that Mr. Parker, quote, "did not understand", we had an examination. And the conclusion of the examination is that Mr. Parker was competent to understand the proceedings against him. That is the record and we are proceeding on that basis. Continued assertions or allegations that I don't understand do not change that finding. . . . I mean, the result of that finding has all kinds of legal effects itself. If I were to find that you didn't understand the proceedings against you -- and I have no reason to think you don't understand. You just aren't happy.

Id. at 132. The court then thoroughly explained to Appellant the trial process, including picking a jury, opening statements, witness testimony, the role of standby counsel, and what the jury was permitted to consider.

During trial, Appellant participated in jury selection, gave an opening statement, cross-examined witnesses, made numerous objections to the Government's evidence, raised a suppression issue with regard to the timing of the warrant, and made a closing argument. After three days of trial, on August 1, 2012, the jury found Appellant guilty of all counts. The district court sentenced Appellant on October 26, 2012, to 121 months imprisonment. This timely appeal followed.

10

It is clear "[w]e review a district court's denial of a defendant's right to self-representation de novo." United States v. Bush, 404 F.3d 263, 270 (4th Cir. 2005) (emphasis supplied). Appellant contends we should also review the district court's decision to allow Appellant to proceed pro se de novo. See, e.g., United States v. Singleton, 107 F.3d 1091, 1097 n.3 (4th Cir. 1997) ("Determination of a waiver of the right to counsel is a question of law, and thus we review it de novo." (internal citations omitted)). The Government counters that Appellant raises this issue for the first time on appeal, and thus, our review is only for plain error. See, e.g., United States v. Bernard, 708 F.3d 583, 588 (4th Cir. 2013) (applying plain error review because Appellant raised the issue of competency to waive the right to counsel for the first time on appeal).

We need not and do not decide the question of which standard of review is appropriate here because Appellant's argument fails when measured against either standard. See, e.g., United States v. Stanley, 739 F.3d 633, 645 (11th Cir. 2014) (declining to select a standard of review when a defendant's challenge to the validity of his waiver of right to counsel failed under both plain error and de novo review). For that reason, we examine the constitutional adequacy of the

11

court's inquiry into Appellant's desire to serve as his own counsel by the less deferential of the two standards, that is, de novo.

III.

We begin our analysis "with the fundamental tenet that a criminal defendant has a Sixth Amendment right to self-representation." United States v. Bernard, 708 F.3d 583, 588 (4th Cir. 2013); see also Faretta v. California, 422 U.S. 806, 819 (1975). A defendant seeking to represent himself "may waive the right to counsel and proceed at trial pro se only if the waiver is (1) clear and unequivocal, (2) knowing, intelligent, and voluntary, and (3) timely." Bernard, 708 F.3d at 588.[3] However, the "right to self-representation is not absolute, and the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." Id. (internal quotation marks omitted). Ultimately, "[t]he determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background,

---

[3] At the outset, it is important to identify that unlike in Bernard, Appellant does not claim that he was not competent to represent himself at trial or not competent to waive his right to counsel. Appellant argues only that his waiver was neither (1) clear and unequivocal; nor (2) knowing and intelligent.

12

experience, and conduct of the accused." <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938); <u>see also</u> <u>United States v. Singleton</u>, 107 F.3d 1091, 1097 (4th Cir. 1997).

Moreover, while a trial court must determine if a waiver of counsel is knowing and intelligent, no particular interrogation of the defendant is required, so long as the court warns the defendant of the dangers of self-representation such that "'his choice is made with his eyes open.'" <u>United States v. King</u>, 582 F.2d 888, 890 (4th Cir. 1978) (quoting <u>Faretta</u>, 422 U.S. at 835); <u>see also</u> <u>Iowa v. Tovar</u>, 541 U.S. 77, 88 (2004) ("We have not . . . prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel."). As we have stated,

> the court must assure itself that the defendant knows the charges against him, the possible punishment and the manner in which an attorney can be of assistance. The defendant must be made aware that he will be on his own in a complex area where experience and professional training are greatly to be desired.

<u>King</u>, 582 F.2d at 890 (internal citations omitted).

Here, Appellant argues the district court failed to ensure that he actually desired to represent himself, and further, that he actually comprehended his right to counsel in an adequate fashion so as to enter a constitutionally effective waiver of his right to counsel.

13

A.

Clear and Unequivocal

First, Appellant contends the district court "misunderstood" some of his statements as a request to represent himself. Appellant's Br. 10. Instead, Appellant argues he simply did not "understand." Id. at 11-12. According to Appellant, this is evidenced by his continued assertions of the same. This argument is contrary to the record. Appellant was repeatedly, clearly, and directly asked at several different court appearances if he wished to represent himself, and he consistently and clearly answered in the affirmative. Specifically, the district court asked Appellant multiple times whether he wished to represent himself at both of the motions hearings on December 20, 2011, and April 27, 2012, as well as on the first day of trial on July 30, 2012. In each of the many instances Appellant was questioned, he confirmed that he wanted to represent himself. For example:

> THE COURT: [Y]ou want to represent yourself in this matter. Is that true?
>
> [APPELLANT]: Yes.

J.A. 52.

> THE COURT: [D]o you want to represent yourself at trial as well?
>
> [APPELLANT]: Yes.

Id. at 54.

14

[THE COURT:] Do you want to proceed with or without a lawyer?

[APPELLANT]: Without.

Id. at 65.

[THE COURT:] Do you still, do you want a lawyer or you don't want a lawyer?

[APPELLANT]: No, I do not.

Id. at 91-92.

THE COURT: Now, what role would you like [standby counsel] to play in the trial?

[APPELLANT]: None.

Id. at 111.

THE COURT: Mr. Parker, do you want [standby counsel] to represent you –

[APPELLANT]: No, sir.

THE COURT: as full counsel?

[APPELLANT]: No.

THE COURT: No?

[APPELLANT]: No, sir.

Id. at 121.

Based on the record before us, there is no question Appellant's waiver of his right to counsel was clear and unequivocal.

15

Knowing and Intelligent

Next, Appellant argues the district court failed to ensure that he comprehended what representing himself entailed, rendering constitutionally infirm his waiver of his right to counsel. This argument is likewise contrary to the record. When Appellant first expressed his desire to represent himself at the December 20, 2011 hearing, the district court explained at length what that would require, i.e., presenting motions, questioning witnesses, and presenting evidence. Then, before empaneling the jury on the first day of trial, the district court spent significant time confirming Appellant's desire to represent himself and explaining the particulars of each phase of the trial. We therefore have little trouble concluding that the court's colloquy with Appellant was constitutionally sufficient, and that Appellant certainly made his choice "with his eyes open." Faretta, 422 U.S. at 835 (internal quotation marks omitted).[4]

We therefore conclude Appellant's election to proceed pro se was not only clear and unequivocal, but also knowing and

---

[4] In attempt to support his argument to the contrary, Appellant simply cherry-picks snippets of the district court's conversation with him. However, when viewing the record as a whole, it is clear the court's conduct was more than constitutionally adequate.

intelligent.  The record reflects that at the time he waived his right to counsel, Appellant understood the legal proceedings and was aware of the nature of the charges against him and the penalties he faced if convicted, even though he often claimed he did not understand.  On multiple occasions, Appellant was informed of the perils of serving as his own counsel and exactly what was involved in undertaking such a task.  Despite these warnings, Appellant elected to proceed pro se.  Moreover, Appellant demonstrated that he was capable of representing himself by presenting an opening statement, questioning witnesses, raising objections, and presenting a closing argument.

IV.

Faced with a difficult situation, the district court did all it could in this case to protect Appellant's constitutional rights.  "A trial court evaluating a defendant's request to represent himself must traverse a thin line between improperly allowing the defendant to proceed pro se, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation."  Fields v. Murray, 49 F.3d 1024, 1029 (4th Cir. 1995) (en banc) (internal quotation marks and alterations omitted).  In traversing this line here, the district court went so far as to provide Appellant with the added safeguard and

17

assistance of standby counsel, even though it was not constitutionally required to do so. See United States v. Beckton, 740 F.3d 303, 307 (4th Cir. 2014) ("[A] pro se defendant has no right to standby counsel when he chooses to proceed pro se.").

For the foregoing reasons, the judgment of the district court is

AFFIRMED.