**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-6358

MACEO SPATES,

Petitioner - Appellee,

v.

HAROLD W. CLARKE, Director, VA Dept. of Corrections,

Respondent - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Raymond A. Jackson, District Judge.  (2:11-cv-00284-RAJ-TEM)

Argued:  October 29, 2013          Decided:  December 4, 2013

Before TRAXLER, Chief Judge, and WILKINSON and FLOYD, Circuit Judges.

Reversed by unpublished per curiam opinion.

**ARGUED**: Matthew P. Dullaghan, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellant.  Neal Lawrence Walters, SCOTT KRONER, PLC, Charlottesville, Virginia, for Appellee.  **ON BRIEF**: Kenneth T. Cuccinelli, II, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Harold W. Clarke, as Director of the Virginia Department of Corrections (hereinafter the "Commonwealth"), appeals the district court's decision granting Maceo Ali Spates's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254, on the ground that Spates did not knowingly and intelligently waive his Sixth Amendment right to counsel. Because the Virginia court's rejection of Spates's constitutional claim was neither contrary to nor an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, we reverse the district court's decision and deny habeas relief.[1]

## I.

## A.

In October 2005, Spates was arrested and ultimately charged in the Commonwealth of Virginia with abduction, see Va. Code § 18.2-47; rape, see Va. Code § 18.2-61; unlawful wounding during the commission of a felony, see Va. Code § 18.2-53; petit larceny, see Va. Code § 18.2-96; armed statutory burglary, see Va. Code § 18.2-90; and entering private property while wearing a mask, see Va. Code § 18.2-422. He was provided court-appointed counsel. Due to the unavailability of witnesses, the

---

[1] The district court previously granted the Commonwealth's motion for a stay pending appeal.

case was continued on at least two occasions to June 2006. Spates thereafter requested two additional continuances, resulting in the scheduling of what was to be a non-jury trial for December 5, 2006. The day before the scheduled trial, however, Spates demanded a jury trial, forcing another continuance until February 12, 2007, in order to empanel a jury.

On February 12, 2007, with the jury and witnesses present, Spates appeared and asserted his constitutional right to discharge counsel and represent himself. See Faretta v. California, 422 U.S. 806 (1975). Spates's counsel also appeared and moved to withdraw from representation in accordance with her client's wishes. Following a brief recess to allow Spates to consult further with counsel regarding his decision, Spates pressed his motion to proceed pro se with appointed counsel acting as standby counsel instead. The trial judge granted the motions and, reluctantly, another continuance to allow Spates to prepare for trial. A pre-trial motions hearing was set for April 23, 2007, and the jury trial for May 7, 2007.

On April 23, 2007, Spates appeared as scheduled. At that time, a written "Waiver of Right to be Represented by a Lawyer" (the "Waiver") was executed by Spates and certified by the trial judge. J.A. 24. Among other things, Spates confirmed that he had "been advised by [the] judge . . . of the nature of the charges in the cases pending against [him] and the potential

3

punishment for the offenses," and that he "underst[oo]d the nature of these charges and the potential punishment for them if [he was] found guilty." J.A. 24. Spates further represented that he understood "the manner in which a lawyer can be of assistance" and that "in proceeding without a lawyer, [he] may be confronted with complicated legal issues." J.A. 24. Spates confirmed his election to waive counsel as follows:

> Understanding my rights to be represented by a lawyer as described above and further understanding the nature of the case and the potential punishment if I am found to be guilty, I waive all of my rights to be represented by a lawyer in these cases, with the further understanding that the cases will be tried without a lawyer either being hired by me or being appointed by the judge for me. I waive these rights of my own choice, voluntarily, of my own free will, without any threats, promises, force or coercion.

J.A. 24. The trial judge also signed the Waiver, certifying that "[u]pon oral examination, [the court] finds that [Spates], having been advised of the rights and matters stated above and having understood these rights and matters, thereafter has knowingly, voluntarily and intelligently waived his rights to be represented by a lawyer." J.A. 24.

On May 7, 2007, the case was called for trial as scheduled, but before a different trial judge. Spates appeared with standby counsel. The witnesses and the jury were again present and ready to proceed. At the inception of the proceeding, however, Spates claimed to have recently "found and retained

4

counsel" who "was supposed to show up" but was not present. J.A. 28. Spates acknowledged that he had elected to proceed pro se and that he had executed the Waiver, but he argued that he did not understand the procedures and was not prepared. Spates also repudiated the written representations he had made in the Waiver. He denied that the previous trial judge had gone "over all of the ramifications [of self-representation] with [him]," as reflected in the Waiver, and claimed that he "didn't know that [he] was signing the waiver to represent [himself]." J.A. 51-52. The presiding trial judge informed Spates that new trial counsel would be allowed to take over representation if he appeared, but denied Spates's request for another continuance as at least fifteen witnesses were present and prepared to proceed, in addition to the jurors, attorneys, and staff. No new counsel ever appeared, and the trial proceeded. Spates represented himself with standby counsel available. At the conclusion of the trial, Spates was convicted of four of the six charges against him,[2] and he was sentenced to a total of thirty-four years imprisonment.

---

[2] Spates was acquitted of the charges of armed statutory burglary, see Va. Code § 18.2-90, and entering private property while wearing a mask, see Va. Code § 18.2-422.

5

B.

After trial, Spates's standby counsel was reappointed to represent him on direct appeal. Spates claimed that the trial court violated his Sixth Amendment right to counsel by denying him counsel on the day of trial. Spates also claimed that he did not knowingly and intelligently waive his right to counsel prior to the trial. The Virginia Court of Appeals rejected both claims and affirmed. Noting that the right to counsel is not without limitations, nor "a right subject to endless abuse by a defendant," J.A. 73-74 (internal quotation marks omitted), the court first rejected Spates's claim that the trial judge denied him counsel, as follows:

> Appellant affirmatively waived his right to counsel as evinced by the waiver form he signed two weeks before trial. By waiting until the morning of trial to announce he no longer wanted to represent himself, appellant attempted to unreasonably and unjustifiably delay the trial, which previously had been continued. We find no error with the trial court's denial of appellant's continuance motion based upon his initial waiver of his right to counsel combined with his last minute attempt to delay the trial.

J.A. 74 (emphasis added). The court also rejected Spates's claim that he did not knowingly and intelligently waive his right to counsel prior to trial, as follows:

> At a February 12, 2007 hearing, appellant requested to relieve his court-appointed counsel and proceed pro se. On April 23, 2007, appellant signed a waiver form waiving his right to be represented by counsel at trial. The form indicates appellant was advised of the charges against him, of the potential

6

punishment he faced, and of his right to be represented by counsel. Appellant waived these rights "of [his] own choice, voluntarily, of [his] own free will, without any threats, promises, force or coercion." The judge also signed the form indicating appellant was subject to oral examination and was advised of his rights, understood his rights, and "knowingly, voluntarily and intelligently waived his rights to be represented by a lawyer." Accordingly, the record includes ample evidence that appellant freely and voluntarily waived his right to be represented by counsel at trial.

J.A. 74-75. The Supreme Court of Virginia refused Spates's petition for further appeal.[3]

C.

Spates thereafter filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254, asserting that the Virginia court's rejection of his claim that he did not knowingly and intelligently waive his right to counsel prior to trial was contrary to or an unreasonable application of Supreme Court precedent.[4]

---

[3] Although Spates did not timely file an appeal to the Supreme Court of Virginia, he was later granted, through Virginia post-conviction proceedings, leave to file a belated appeal. Spates also filed a second petition for post-conviction relief based on his Sixth Amendment claims, but the claims were dismissed as procedurally barred because they had already been decided on the merits in the direct appeal.

[4] Spates did not pursue his claim that the trial judge violated his Sixth Amendment right to counsel by refusing to continue the trial and either reappoint counsel or wait for retained counsel to enter an appearance.

7

For reasons that remain unclear, the district court ordered the Commonwealth to have a transcript from the February 12, 2007, hearing prepared and submitted for inclusion in the federal habeas court record, but did not order preparation of the transcript from the April 23, 2007, hearing. Neither transcript had been prepared or submitted by either party to the Virginia Court of Appeals in connection with its review of Spates's constitutional claim, nor did the Virginia Court of Appeals order production of either transcript on its own accord.

Relying almost exclusively upon the February 12, 2007, transcript and Spates's attempt to revoke his waiver on May 7, 2007, the district court granted habeas relief and ordered that Spates be retried or released from custody. The court found that the trial judge's colloquy with Spates on February 12 was constitutionally inadequate to ensure that Spates had waived his right to counsel knowingly and intelligently, and that the Virginia Court of Appeals decision to the contrary was unreasonable. This appeal followed.

II.

A.

Under 28 U.S.C. § 2254(d), as revised by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), our review of the Virginia court's decision rejecting Spates's Sixth Amendment waiver claim is highly deferential. Where, as here, a federal

8

habeas petitioner's constitutional claim has been "adjudicated on the merits in State court proceedings," we may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2); see also Harrington v. Richter, 131 S. Ct. 770, 785 (2011). We must presume the correctness of the state court's factual findings, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); see also Harrington, 131 S. Ct. at 785. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

The Sixth Amendment guarantees criminal defendants the assistance of counsel during all critical stages of the criminal justice process, as well as the implied inverse right "to proceed without counsel when [the defendant] voluntarily and intelligently elects to do so." Faretta, 422 U.S. at 807. The "defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation." Id. at 835. Nonetheless, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Id. at 835 (internal quotation marks omitted).

The Supreme Court, however, has never "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." Iowa v. Tovar, 541 U.S. 77, 88 (2004). Rather, "[t]he information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." Id.; see also Johnson v. Zerbst, 304 U.S. 458, 464 (1938) ("The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the

10

particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."); United States v. Gallop, 838 F.2d 105, 109 (4th Cir. 1988) ("While the Faretta Court recognized the absolute right of a defendant to represent himself as long as that decision is made knowingly, intelligently, and voluntarily, it did not lay down detailed guidelines concerning what tests or lines of inquiry a trial judge is required to conduct to determine whether the defendant's decision was 'knowing and intelligent.'"). In the context of a guilty plea, for example, the Court has held that "[t]he constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." Tover, 541 U.S. at 81. "As to waiver of trial counsel," the defendant "must be warned specifically of the hazard ahead." Id. at 88-89; see also Patterson v. Illinois, 487 U.S. 285, 298 (1988) (noting that because of "the enormous importance and role that an attorney plays at a criminal trial," the "most rigorous restrictions" are imposed "on the information that must be conveyed to the defendant . . . before permitting him to waive his right to counsel.").

Finally, because <u>Faretta</u> sets forth a general rule governing such waivers of counsel, we must remain particularly mindful of the leeway state courts have in applying the <u>Faretta</u> rule. "'[T]he more general the rule' at issue – and thus the greater the potential for reasoned disagreement among fair-minded judges – 'the more leeway state courts have in reaching outcomes in case-by-case determinations.'" <u>Renico v. Lett</u>, 559 U.S. 766, 776 (2010) (alteration omitted) (quoting <u>Yarborough</u>, 541 U.S. at 664); <u>see also</u> <u>Harrington</u>, 131 S. Ct. at 786. For similar reasons, a federal habeas court's reliance upon circuit court precedent interpreting or expanding such a general Supreme Court rules is severely constrained. <u>See</u> <u>Marshall v. Rodgers</u>, 133 S. Ct. 1446, 1450 (2013).

> Although an appellate panel may, in accordance with
> its usual law-of-the-circuit procedures, look to
> circuit precedent to ascertain whether it has already
> held that the particular point in issue is clearly
> established by Supreme Court precedent, it may not
> canvass circuit decisions to determine whether a
> particular rule of law is so widely accepted among the
> Federal Circuits that it would, if presented to this
> Court, be accepted as correct.

<u>Id.</u> at 1450-51 (citations omitted); <u>see also</u> <u>Parker v. Matthews</u>, 132 S. Ct. 2148, 2155-56 (2012) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court," and "therefore cannot form the basis for habeas relief under AEDPA."). We are not at liberty to upset a state court adjudication on a constitutional claim based upon

12

requirements that we might recommend to or even impose upon our own district courts, so long as the state court's application of the general rule was a reasonable one in light of the controlling Supreme Court mandate.

Applying these principles to the case before us, we have no trouble concluding that the Virginia Court of Appeals' adjudication of Spates's Sixth Amendment waiver claim was neither contrary to nor an unreasonable application of the controlling Supreme Court precedent, and that the district court erred in relying upon circuit precedent to conclude otherwise.[5]

---

[5] We note the Commonwealth's objection to the district court's decision to supplement the record on federal habeas review with a transcript that was not submitted to the Virginia court for its consideration on appeal and, in light of the Supreme Court's decision in Cullen v. Pinholster, 131 S. Ct. 1388 (2011), we share the Commonwealth's concern. As Spates points out, Cullen involved mitigation evidence that was first created in a federal evidentiary hearing, whereas the February 12 transcript could have been (but was not) submitted to the Virginia Court of Appeals. Nevertheless, the district court's consideration of the February 12 transcript did in fact result in precisely what AEDPA seeks to avoid -- a "[f]ederal court[] sitting in habeas [operating as] an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." Id. at 1401. The district court's sua sponte decision to reach for evidence not submitted to it or to the last state court that considered the matter, although not as extreme as the situation in Cullen, thus seems at least inconsistent with the spirit of Cullen and the deference we owe to the procedural rules and substantive judgments of state courts. In the end, however, it is unnecessary for us to resolve this dispute in the Commonwealth's favor because, even considering the February 12 transcript, it is clear that Spates's Sixth Amendment claim fails under AEDPA, and that the district court erred in concluding otherwise.

13

In *Faretta*, the Supreme Court, in concluding that the petitioner was sufficiently aware of the consequences of his choice, pointed to several case-specific facts that actually parallel many of those in the instant case. Specifically, the Court noted as follows:

> [W]eeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel. The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. The trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel, and that Faretta would be required to follow all the "ground rules" of trial procedure.

*Faretta*, 422 U.S. at 835-36. In light of these findings, the Court additionally noted the lack of any "need [to] assess[] how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions . . . . For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself." *Id.*

Here, Spates clearly and unequivocally represented to the trial judge on February 12 that he wanted to proceed *pro se*. *See* J.A. 140 ("I want to represent myself, which is my right."); J.A. 143 ("I want to represent myself, but I want to be prepared"). The trial judge warned Spates that the case would involve "a jury trial [with] a lot of legal issues and legal

14

points that lawyers go to law school and gain experience in to learn," J.A. 129, and that his choice to represent himself was "probably the most unwise thing that he could do," J.A. 137. Spates was informed that he would "be required to know when to make an objection, [and] the basis of the objection," that he would have "to pick the jury," and would "need to know everything that the lawyers know," J.A. 139-40, and he was warned that he would not "be given any extra slack in this," J.A. 140. Although Spates pushed mightily (and successfully) for a continuance at that time, Spates never expressed a desire to retain substitute counsel until May 7, 2007, the scheduled date for trial, when he again sought to force delay by revoking his waiver and asking for a continuance. Although Spates claimed at that time that he did not understand the procedure and could not effectively represent himself, "his technical legal knowledge . . . was not relevant to an assessment of his knowing exercise of the right to defend himself," Faretta, 422 U.S. at 836, either when he invoked that right on February 12, or when he confirmed the waiver on April 23. The district court erred in ruling otherwise.

As the district court observed, the trial judge did not address Spate's education or background on the record on February 12. However, Faretta imposes no requirement that such an assessment be discussed on the record, and the record

15

otherwise fully supports the Virginia court's conclusion that Spates was "literate, competent, and understanding." Id. at 835. The trial judge had ample opportunity to observe Spates during the colloquy on February 12. Moreover, Spates's comments reveal that he was fully capable of grasping the issues related to self-representation. There is also no indication that Spates's appointed counsel believed that he was incapable of representing himself or that Spates did not understand the demands and dangers of proceeding without counsel. On the contrary, counsel acknowledged Spates's right to do so, conveyed the differences of opinion that led to the demand, and moved to withdraw as counsel of record and be appointed as standby counsel instead.

The transcript from the May 7 proceeding also confirms that, while Spates may have regretted his earlier choice, he was fully capable of understanding his right to counsel when he waived it. The Virginia court viewed Spates's efforts that day as an "attempt[] to unreasonably and unjustifiably delay the trial, which previously had been continued." J.A. 74; see Faretta, 422 U.S. at 834 n.46 ("The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law."). That determination is fully supported

16

by the record, and the district court erred in substituting its contrary findings for those of the state court.

Pointing primarily to the February 12 transcript, Spates argues and the district court concluded that the trial court's Faretta inquiry was constitutionally insufficient. But that is not the end of the story. Spates clearly represented in the April 23 Waiver that he had been informed of the charges against him and the potential punishments he faced if convicted, and he was again warned that he may be confronted with complicated legal issues. The trial judge certified that she conducted an oral examination of Spates, that he had been advised him of the charges, punishments, and rights set forth therein, and found that Spates "knowingly, voluntarily and intelligently waived his rights to be represented by a lawyer." J.A. 24.[6] As the

---

[6] We can summarily dispose of Spates's argument that the trial court "believed it was putting the waiver issue to rest [on February 12] and [that] nothing further would remain to be done regarding it," Spates Brief at 26, as well as his unsupported allegation that "all that took place on [April 23] with respect to self-representation was that Spates signed the waiver form," Spates Brief at 29. There is no evidence to support these suppositions, nor any legal basis upon which we could reject the Virginia court's decision based upon them. See Parke v. Raley, 506 U.S. 20, 29-30 (1992) (explaining that in habeas corpus actions and other collateral challenges, "there is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears") (internal quotation marks and alteration omitted); Johnson v. Zerbst, 304 U.S. 458, 468 (1938) ("When collaterally attacked, the judgment of a court carries with it a presumption of regularity. Where a defendant,
(Continued)

17

Commonwealth points out, we are not at liberty to ignore the April 23 Waiver based upon the February 12 colloquy that preceded it, nor may we make credibility determinations and findings of fact that contravene those made by state courts which are supported by the record.

Here, there was more than sufficient evidence upon which the Virginia Court of Appeals could reasonably conclude that Spates was "made aware of the dangers and disadvantages of self-representation," "that he kn[ew] what he [was] doing," and that "his choice [was] made with eyes open."  Faretta, 422 U.S. at 835 (internal quotation marks omitted).  And "[b]ecause it is not clear that the [Virginia Court of Appeals] erred at all, much less erred so transparently that no fairminded jurist could agree with that court's decision,"  Bobby v. Dixon, 132 S. Ct. 26, 27 (2011) (per curiam), we must reverse the district court's grant of habeas relief.

REVERSED

---

without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel.") (footnote omitted).