**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-4502**

UNITED STATES OF AMERICA,

             Plaintiff – Appellee,

      v.

ALVIS DAMON WILLIAMS,

             Defendant - Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Columbia.   Joseph F. Anderson, Jr., Senior
District Judge.   (3:13-cr-00758-JFA-1)

Argued:  September 17, 2015          Decided:  December 3, 2015

Before WYNN, FLOYD, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**:  Elizabeth Anne Franklin-Best, ELIZABETH FRANKLIN-BEST,
LLC, Columbia, South Carolina, for Appellant.   Julius Ness
Richardson, OFFICE OF THE UNITED STATES ATTORNEY, Columbia,
South Carolina, for Appellee.   **ON BRIEF**: William N. Nettles,
United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Alvis Damon Williams was indicted on charges of possession with intent to distribute cocaine and related firearms offenses. Although represented by a public defender during most of the pretrial proceedings, Williams elected to represent himself at his trial. A jury convicted Williams on all counts.

On appeal, Williams argues that the district court erred by permitting him to represent himself. Williams also assigns error to several of the district court's trial management decisions. For the reasons below, we affirm.

I.

A.

On June 26, 2013, a Sumter County Sheriff's Office employee pulled over a black Chevrolet Impala driven by Williams. The ostensible reason for the stop was that the windows on the Impala appeared to be overly-tinted in violation of South Carolina state law.[1] The officer asked Williams, the lone occupant of the car, for his license and registration. Noting a strong smell of marijuana, the officer asked Williams to step

---

[1] In fact, the Sheriff's Office had been alerted by Sumter County narcotics officers that Williams had just sold drugs to a confidential informant as part of a controlled drug buy. The narcotics officers requested that the traffic stop be based, if possible, on probable cause independent of the controlled drug buy so as to protect the identity of the confidential informant.

out of the car.  Williams consented to a search of his person, which turned up approximately $1,600 in cash in Williams's pockets.  The officer then conducted a probable cause search of the car.  The search revealed a handgun between the driver's seat and center console and plastic bags with crack and powder cocaine, marijuana, and assorted paraphernalia on the passenger-side floor.

A federal grand jury subsequently indicted Williams for possession with intent to distribute cocaine, being a felon in possession of a firearm, and possession of a firearm in furtherance of drug trafficking.[2]  In September 2013 the district court appointed a federal public defender to represent Williams, and Williams entered a plea of not guilty.  Williams's appointed counsel represented him in various pretrial proceedings, including an unsuccessful suppression hearing in October 2013.

B.

In December 2013, Williams filed a pro se motion that stated his desire to represent himself and requested that the court replace his appointed counsel.  Construing the motion principally as a request for new counsel, the district court

---

[2] The grand jury also indicted Williams for possession with intent to distribute marijuana, but the government moved to dismiss that count prior to the completion of the jury trial.

3

denied Williams's request for alternate representation. The district court noted that Williams would be allowed to represent himself if he so desired. During jury selection on January 7, 2014, Williams made an oral motion to appoint new counsel. The district court again denied his motion and set trial for February 11, 2014.

On January 30, 2014, Williams again filed a pro se motion to relieve his appointed counsel, and on February 4, 2014, Williams's appointed counsel filed a motion for self-representation on Williams's behalf. The district court addressed Williams's representation at a pretrial conference on February 6, 2014.

After confirming Williams's desire to represent himself, the district court proceeded to ask Williams a number of questions about his legal experience and his understanding of the charges against him and his potential sentence. The district court told Williams it thought his appointed counsel was "a very competent, capable attorney" and strongly urged Williams not to try to represent himself. J.A. 91-92. Williams re-confirmed his desire to proceed pro se, telling the district court that his appointed counsel had refused to subpoena two witnesses that Williams thought should be called at trial. At the request of the government, the district court informed Williams that he might be shackled at trial based on his

4

criminal record and the charges against him, and if the jury realized he was shackled it would likely hurt his case.

The district court then asked the government attorneys to step out of the courtroom, and enquired into the witnesses Williams wished to subpoena and the source of Williams's discontent with appointed counsel. Williams and his appointed counsel informed the district court of a number of strategic disagreements and communication problems between the pair. The district court then recalled the government attorneys, and, after opining that Williams was making "a huge mistake," granted Williams's request to represent himself. J.A. 98-99.

C.

Trial commenced on February 11, 2014. In light of Williams's past criminal record and potential sentence, the U.S. Marshals Service recommended that Williams be shackled and wear an electronic stun device on his leg. Williams wore street clothes during his trial, along with padded shackles and the stun device.

After opening statements, the government called the Sumter County officer who had conducted the traffic stop. On direct examination, the government did not elicit testimony concerning the controlled drug buy, instead presenting the pretextual window-tint violation as the lone impetus for stopping the car

5

Williams had been driving. On cross-examination, however, Williams immediately asked the officer about the earlier drug transaction. The government's remaining witnesses were experts on drugs and firearms.

At the beginning of the second day of trial, the district court asked Williams if he had had any second thoughts about representing himself. Williams confirmed that he wished to continue to do so, and the trial continued with the balance of the government's case-in-chief. When the government rested, Williams sought to recall the Sumter County officer to the stand. Noting that Williams had had an opportunity to cross-examine the officer already, the district court denied the request.

Williams called no other witnesses, but chose to testify on his own behalf. The district court had Williams take and leave the stand with the jury out of the courtroom so that the jury would not observe Williams's shackles. During his testimony, Williams asked (himself) "did I carry guns when I was out?" and answered "[n]o, I didn't carry no gun because I know I was a convicted felon and I know what could happen to me." J.A. 273. The government argued successfully that this "broad denial" of firearm possession opened the door to introduce evidence of Williams's prior firearm possessions, and the government proceeded to question Williams about them. J.A. 275.

Williams also testified on re-direct that he had not been involved in any drug transaction shortly before he had been pulled over. After Williams rested, the government called a rebuttal witness, a Sumter County narcotics officer, to testify about the controlled drug buy. The government elicited testimony that some of the cash recovered from Williams's pockets during the traffic stop was the same marked cash that had been provided to the confidential informant to purchase cocaine from Williams during the controlled buy.

The jury deliberated for less than an hour, returning a verdict of guilty on all counts. On June 20, 2014, the district court sentenced Williams to the statutory mandatory minimum term of 15 years in prison. This appeal followed, with Williams represented by appointed appellate counsel.

II.

We review arguments raised for the first time on appeal for plain error. United States v. Bernard, 708 F.3d 583, 588 (4th Cir. 2013).

> To establish plain error, [the appellant] must show that the district court erred, that the error was plain, and that it affected his substantial rights. With regard to the third element of that standard, [the appellant] must show that the alleged error actually "affected the outcome of the district court proceedings."

7

*Id.* (internal citation omitted) (quoting <u>United States v. Olano</u>, 507 U.S. 725, 734 (1993)).  We review a district court's evidentiary rulings for abuse of discretion.  <u>United States v. Ford</u>, 88 F.3d 1350, 1362 (4th Cir. 1996).

## III.

Williams argues that the district court erred by permitting him to represent himself.  It is "fundamental" that "a criminal defendant has a Sixth Amendment right to self-representation."  <u>Bernard</u>, 708 F.3d at 588 (citing <u>Faretta v. California</u>, 422 U.S. 806, 819, 821 (1975)).  However, a defendant's request to waive the right to counsel and proceed pro se must be "(1) clear and unequivocal, (2) knowing, intelligent, and voluntary, and (3) timely."  <u>Id.</u>

The record makes plain that Williams's request was "clear and unequivocal" and "timely," such that only his competency to knowingly, intelligently, and voluntarily waive his right to counsel is at issue.  Williams's overarching argument is that had the district court asked more about his educational background, it would have learned facts establishing that he was not competent to represent himself.  These facts include that Williams had a history of being in learning-disabled classes, had failed in his first attempt to secure a GED, and that

8

Williams had stated that as a child he had threatened to kill himself to avoid being beaten by his mother.[3]

Williams's argument misapprehends the Faretta competency standard. "[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." Bernard, 708 F.3d at 589 (quoting Godinez v. Moran, 509 U.S. 389, 399 (1993)). As we explained in Bernard, "it is constitutional for a state to allow a defendant to conduct trial proceedings on his own behalf when he has been found competent to stand trial." 708 F.3d at 589 (citing Indiana v. Edwards, 554 U.S. 164, 172-73 (2008)). There is no suggestion that Williams was incompetent to stand trial, and Williams does not argue otherwise on appeal.

Nor does Williams point to any authority requiring a district court to elicit particular educational or background information from a defendant seeking to represent themselves. Neither the Supreme Court nor this Circuit has "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." Iowa v. Tovar, 541 U.S. 77, 88 (2004); accord Spates v. Clarke, 547 F. App'x 289, 293 (4th

---

[3] Other facts cut against Williams's argument, including that an IQ test placed his overall intellectual functioning in the average range, that he eventually earned his GED (apparently on the second attempt), and that he was taking classes in auto mechanics at a state technical college.

Cir. 2013). The defendant must only "be made aware of the dangers and disadvantages of self-representation" such that "he knows what he is doing and his choice is made with eyes open." Edwards, 554 U.S. at 183 (quoting Faretta, 422 U.S. at 835); see also, e.g., United States v. Parker, 576 F. App'x 157, 162 (4th Cir. 2014).

The record makes clear that the district court went out of its way to make Williams aware of the "dangers and disadvantages of self-representation," including repeatedly advising Williams that the court thought his interests would be better served by not attempting to represent himself. In other words, the district court made sure Williams's choice was made with "eyes open." We affirm the district court's decision to allow Williams to represent himself.


IV.

Williams also contends that the district court erred by not reinstating appointed counsel after observing Williams's trial performance. The gist of Williams's argument is that certain mistakes he made during trial, such as opening the door to evidence of his prior firearms offenses, should have led the district court to conclude that he was incompetent to continue representing himself. This argument again misapprehends the appropriate competency standard.

10

It is true that competency can change over time. For example, a mentally-ill defendant may be rendered competent to stand trial through medication, but become incompetent during the trial if the medication ceases to be effective. Cf. Bernard, 708 F.3d at 586-87. But the competency standard does not change over the course of the trial. Williams's missteps at trial simply do not call into question his mental competency to stand trial or to choose self-representation. "'[I]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts,' [but] a criminal defendant's ability to represent himself has no bearing upon his competence to choose self-representation." Godinez, 509 U.S. at 400 (quoting Faretta, 422 U.S. at 834); see also, e.g., Bernard, 708 F.3d at 593 ("[Defendant's] failure to object during the Government's case-in-chief, question two of the witnesses, call witnesses on his own behalf, or otherwise 'think like a lawyer' did not render him mentally incompetent."). We therefore affirm the district court's decision to allow Williams to continue to represent himself.

V.

Finally, Williams assigns error to a number of the district court's trial management decisions. Specifically, Williams

11

argues that the district court erred by: (1) ordering that he be shackled during trial; (2) denying his request to take certain discovery materials with him to the detention center prior to trial; (3) suggesting that he could not subpoena witnesses unless he could personally pay the witness fee; and (4) denying his request to recall a government witness to the stand. We find each of these contentions to be without merit.

A.

Williams argues that the district court's shackling order was unjustified and impermissibly impeded his ability to exercise his Sixth Amendment right to self-representation. Williams relies primarily on Deck v. Missouri, which established that "where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice" but instead "[t]he State must prove beyond a reasonable doubt that the [shackling] . . . did not contribute to the verdict obtained." 544 U.S. 622, 635 (2005) (final alteration in original) (internal quotation marks omitted). However, Williams's premise, that the district court ordered him shackled without adequate justification, is not supported by the record. The district court had a shackling recommendation from the U.S. Marshals Service, a recommendation based on, among other things,

12

Williams's extensive criminal record and the seriousness of the current charges. Further, the district court (and the government), took reasonable measures to minimize the impact of the shackles and stun device. See, e.g., J.A. 114 (indicating Williams was provided street clothing and that shackles were padded to prevent noise that might alert the jury); J.A. 219 (indicating the government questioned witnesses from its counsel desk to be consistent with Williams); J.A. 281-82 (indicating Williams took the stand and stood down outside the presence of the jury). We find no error in the district court's shackling decision.

B.

Williams also contends that he could not effectively represent himself because he did not have access to certain restricted discovery materials at the detention center. We disagree. The record indicates that the material was restricted because of potentially identifying information about a confidential informant, and a standing discovery order reasonably barred such material from the detention center. Williams was fully aware of the information contained in the material, as his appointed counsel had previously discussed it with him. Williams also had access to the material while at the courthouse. Williams does not point to any discovery material

13

that would have been relevant to his defense and has made no showing "that the alleged error actually 'affected the outcome of the district court proceedings.'" Bernard, 708 F.3d at 588 (quoting Olano, 507 U.S. at 734).

C.

Williams further contends that the district court impeded his ability to represent himself by requiring him, an indigent defendant, to pay the witness fees for any witnesses he wished to subpoena. Again, this contention is not supported by the record. Williams's motion to proceed pro se stemmed from his desire to subpoena certain witnesses that his appointed counsel had refused to subpoena. As part of the Faretta colloquy, the district court asked Williams about his knowledge of subpoena procedures, including the ordinary need to pay a witness fee. This appears to us plainly part of the district court's effort to make Williams "aware of the dangers and disadvantages of self-representation." Faretta, 422 U.S. at 835. Immediately after the district court's discussion of subpoena procedures, the government clarified that the witness fee would not be an issue. In any event, at the time the exchange took place, Williams was still represented by counsel, and his counsel did not object at any point. There is simply no indication from the

14

record that the district court in fact placed any financial impediment in the way of Williams's self-representation.

D.

Finally, Williams argues that the district court erred by not allowing him to recall the officer who searched his car to the stand. We disagree. The district court recognized that it had the authority to allow the officer to be recalled, but reasoned that Williams had already had a chance to thoroughly cross-examine the witness, and exercised its discretion to refuse Williams's request. We find no abuse of discretion here. Cf. Ford, 88 F.3d at 1362 (finding no abuse of discretion where district court refused to allow recall of a cross-examined witness where defendant could make proposed point to jury via closing arguments).

VI.

For the foregoing reasons, we affirm.

AFFIRMED