UNITED STATES of America,
Plaintiff–Appellee,

v.

David Patrick GALLAGHER,
Defendant–Appellant.

No. 96–30007.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 19, 1996.

Decided Oct. 31, 1996.

Thomas K. Coan, Portland, Oregon, for defendant-appellant.

Frederick R. Petti, Assistant United States Attorney, Portland, Oregon, for plaintiff-appellee.

Before PREGERSON, BOOCHEVER and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

## OVERVIEW

Defendant David Patrick Gallagher was convicted of unauthorized use of an access device in violation of 18 U.S.C. § 1029(a)(2) and bank fraud in violation of 18 U.S.C. § 1344, and sentenced to thirty-seven months incarceration. Defendant appeals both his conviction and the sentence imposed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURAL HISTORY

In May 1995, defendant was awaiting sentencing on a conviction for the unauthorized use of an access device in violation of 18 U.S.C. § 1029(a)(2) in the case *United States v. Gallagher*, CR 95–72–1–MA ("*Gallagher I*"). *Gallagher I* involved the theft of an automated teller machine ("ATM") card and personal identification number ("PIN") that defendant and his accomplices used to steal over $346,000. Defendant and his accomplices used the stolen ATM card and PIN to make fraudulent deposits at various ATM locations and, thereafter, used the ATM card and PIN to withdraw the over $346,000 from 48 different ATM locations.

The facts leading to the present case ("*Gallagher II*") are as follows:

On May 16, 1995, Donna Gustafson played golf in Eugene, Oregon. She left her purse in her locked car while she played. During the time that Ms. Gustafson was on the golf course, someone broke into her vehicle and stole the next to the last check from her checkbook. Ms. Gustafson did not realize that the check was missing until she received her account statement which indicated that the check had been negotiated. The check had been made payable to Vicki Jones in the amount of $1,500. Someone forged Ms. Gustafson's signature on the check.

On May 18, 1995, Billijean Hill played golf near Lincoln City, Oregon. Ms. Hill left her purse and checkbook in her locked vehicle while she played. A few days later, Ms. Hill discovered that the next to the last check in her checkbook had been negotiated. The check was made payable to Vicki C. Jones in the amount of $1,500. Someone forged Ms. Hill's signature on the check.

On the same day that Ms. Hill played golf at the Lincoln City golf course (May 18, 1995), defendant was eating a meal at Mo's Restaurant in Lincoln City. The restaurant and the golf course are 4.1 miles apart. Ms. Hill left her purse unattended from 8:30 a.m. to between 11:30 a.m. and noon. The defendant paid for his meal at the restaurant at 11:32 a.m.

On May 19, 1995, Vicki C. Jones and Ted Jones played golf in Salem, Oregon. Mrs. Jones left her purse in their vehicle while they played. After they returned to the vehicle, Mrs. Jones discovered that two of her ATM cards were missing from her wallet. One of the ATM cards was associated with an account Mrs. Jones had with her mother at the First Interstate Bank. Mrs. Jones also had the checkbook for the First Interstate Bank joint account in her purse, and she had written the PIN for the account on the check register. Mrs. Jones called First Interstate Bank to report that the card was missing.

At 11:34 a.m. on May 19, 1995, someone used Mrs. Jones' First Interstate Bank ATM card and PIN to inquire if there was any money in the joint account. At 11:38 a.m., someone used the ATM card and PIN to attempt to withdraw money from the account, but the transaction was denied because there were insufficient funds in the account.

A short time later on May 19, 1995, a woman entered the First Interstate Bank in Albany, Oregon. Using Mrs. Jones' ATM card, she presented the checks stolen from Ms. Gustafson and Ms. Hill to a teller for deposit into Mrs. Jones' account. The checks were both made payable to Mrs. Jones, each in the amount of $1,500. The woman asked the teller to credit the deposit immediately to the account. The woman also

asked for $500 cash back from the deposit. Because she used Mrs. Jones' ATM card for identification, the teller honored the request and gave the woman $500.

About one-half hour after making the deposit, the woman came back into the bank and asked the teller if she had posted the deposit. The teller said no, but she would do it shortly. The teller posted the deposit, and at 1:52 p.m. someone used Mrs. Jones' ATM card and PIN to withdraw $500 from the account at an ATM in Albany, Oregon.

Mrs. Jones had reported her card stolen at approximately 2:00 p.m. At 3:12 p.m., someone again tried to use Mrs. Jones' ATM card and PIN to withdraw $500 from the account at an ATM in Tigard, Oregon. Because Mrs. Jones had reported her ATM card stolen, First Interstate Bank had placed a block on Mrs. Jones' card and the transaction was denied.

On June 9, 1995, the check stolen from Ms. Hill and fraudulently deposited into Mrs. Jones' account was sent to the Oregon State Police Laboratory. A fingerprint of a right index finger was found on the check. The fingerprint was compared with the fingerprint cards of defendant, and it was determined that the right index fingerprint on the check belonged to defendant.

On July 19, 1995, defendant was indicted for unauthorized use of an access device in violation of 18 U.S.C. § 1029(a)(2) and bank fraud in violation of 18 U.S.C. § 1344. On October 6, 1995, a jury found defendant guilty as charged. On December 20, 1995, the district court sentenced defendant to thirty-seven months of incarceration, to be served consecutive to an undischarged term of imprisonment to which defendant was sentenced in *Gallagher I.*

Defendant timely appeals both his conviction and the sentence imposed.

## ANALYSIS

### A. *Evidentiary Rulings*

#### 1. *Standard of Review*

■ A district court's evidentiary rulings during trial are reviewed for an abuse of

discretion. *United States v. Brooke*, 4 F.3d 1480, 1487 (9th Cir.1993). A district court abuses its discretion where its "ruling is clearly in error-where we have a definite and firm conviction of error." *Id.*

### 2. *Defendant's Right to Testify*

Defendant claims that the district court deprived him of his right to testify on his own behalf when it prevented him from continuing to testify after his counsel finished questioning him. He claims that by not inquiring as to what he wished to communicate further to the jury, the district court effectively denied his right to testify.

■ "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). This right includes the right of a defendant to take the stand in his own defense and present relevant testimony. *Rock v. Arkansas*, 483 U.S. 44, 52, 107 S.Ct. 2704, 2709, 97 L.Ed.2d 37 (1987). This right is not, however, without limitation. *Id.* at 55, 107 S.Ct. at 2711. "The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id.* (quotations omitted). When exercising this right, the defendant must "comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302, 93 S.Ct. at 1049. Restrictions on a defendant's right to testify violate the Constitution only when they are arbitrary or disproportionate to the purposes they are designed to serve. *Rock*, 483 U.S. at 55–56, 107 S.Ct. at 2710–12.

■ In the present case, defendant elected to take the stand during trial. After he finished testifying, defendant's counsel indicated that defendant wished to take the stand again. Defendant's counsel also informed the court that he was advising the defendant to not retake the stand. The district court urged defendant to heed the advice of his counsel. The court then gave defendant and his counsel the lunch hour to confer on the matter.

After lunch, defendant's counsel indicated he was planning to recall defendant. The Government objected, arguing that such testimony would be cumulative with defendant's prior testimony. Defense counsel conceded that the testimony would be cumulative. The district court allowed defendant to retake the stand, but cautioned defendant that he needed to answer questions in a brief, plain manner.

Defendant was asked three questions. When defendant's counsel indicated that he had no further questions, defendant stated he wanted to continue speaking. Because there was no question pending, the district court would not permit defendant to testify, and he was excused from the stand. Defendant claims that this action by the district court deprived him of his right to testify. We disagree.

Defendant was allowed to testify in response to his counsel's questions and present his theory of the case. The district court restricted defendant's right to testify only when defendant attempted to proceed in a narrative fashion after his counsel had finished questioning him and when no questions were pending. The district court's ruling was neither arbitrary nor disproportionate to the purpose of insuring that the trial proceed in an orderly and fair manner. *See* Fed. R.Evid. 611(a); *Hutter Northern Trust v. Door County Chamber of Commerce*, 467 F.2d 1075, 1078 (7th Cir.1972) (upholding trial court's ruling precluding pro se plaintiff from testifying in narrative format). This restriction on defendant's right to testify did not violate the Constitution and was not an abuse of the district court's discretion.

### 3. *Access to Pretrial Services Records*

■ Defendant claims that the district court erred by denying him access to pretrial services records that might have supported his theory of defense.

Defendant denied any involvement in the crimes involved in this case. His theory of defense was that someone else committed the crimes. He believed that it was just as likely that a codefendant from *Gallagher I* committed the crimes in the present case and that someone from the Government framed him

by having him touch one of the forged checks. Defendant believed he would find support for his theory of defense in the files of pretrial services officers who supervised the other defendants in *Gallagher I*. In particular, defendant wanted to examine the files in order to determine the location of the other defendants in *Gallagher I* between May 16, 1995, and May 19, 1995. In order to access this information, defendant filed a motion to disclose confidential pretrial services officers' records.[1]

The district court declined to order pretrial services to turn over its entire files. Instead, the district court ordered pretrial services to release its chronological logs for all the defendants in *Gallagher I* to both defendant and the Government. These chronological logs contained information on the location of each of the *Gallagher I* defendants when they traveled away from home, including the location of the *Gallagher I* defendants when the items used in the present case were stolen-the very information defendant was seeking.

The district court's ruling allowed defendant to access the information he was seeking while maintaining the confidentiality requirement of 18 U.S.C. § 3153(c)(1). The district court's ruling was reasonable and therefore not an abuse of discretion.

### 4. *Testimony of Assistant United States Attorney*

■ Defendant claims that the district court abused its discretion when it refused to allow defendant to call Mr. Lance Caldwell, an Assistant United States Attorney (AUSA), as a witness because the district court did not know "how the witness would respond to the Defendant's inquiries." Defendant claims that the AUSA's testimony was relevant to prove the Government's bias and motive for setting defendant up for the crime in the present case.

After a recess in the trial, defendant's counsel informed the court that his client wanted to call AUSA Caldwell as a witness. AUSA Caldwell had prosecuted defendant and his co-defendants in *Gallagher I* and was also present at the time of defendant's arrest on the charge in the present case. Defendant had neither included AUSA Caldwell on his witness list nor served him with a subpoena. However, the AUSA was present in the courtroom listening to the proceedings, and defendant wanted to call him as a witness.

The Government objected to defendant calling the AUSA as a witness, arguing that the testimony defendant was intending to elicit from the AUSA was irrelevant. The trial court asked defendant's counsel to make a statement as to what he thought he would elicit from the AUSA as far as the charges in the indictment were concerned. Defendant's counsel responded:

> We want to know what Mr. Caldwell's feelings are towards David Gallagher. We want to know why Mr. Caldwell was present when Mr. Gallagher was arrested.

> We want to know if Mr. Caldwell had any part in making that decision to have Mr. Gallagher rearrested.

The testimony that defendant wanted to elicit from the AUSA was irrelevant to the charges in the indictment. Therefore, the district court's preclusion of the AUSA's testimony was not erroneous and not an abuse of discretion. *See De Anda v. City of Long Beach*, 7 F.3d 1418, 1421–22 (9th Cir.1993).

### B. *Sentencing*

#### 1. *Standard of Review*

■ The constitutionality of a criminal statute is reviewed *de novo*. *United States v. Harding*, 971 F.2d 410, 412 (9th Cir.1992), *cert. denied*, 506 U.S. 1070, 113 S.Ct. 1025, 122 L.Ed.2d 170 (1993).

---

1. These records are confidential pursuant to 18 U.S.C. § 3153(c)(1), which provides, in relevant part:

    [I]nformation obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for

the purposes of a bail determination and shall otherwise be confidential. Each pretrial services report shall be made available to the attorney for the accused and the attorney for the Government.

### 2. *Discussion*

Defendant claims that U.S.S.G. § 2F1.1 is unconstitutionally vague as applied to the facts of his case.

■ A criminal statute is unconstitutionally vague when it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979). "So too, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *Id.* When a defendant's challenge is outside the First Amendment context, he can only challenge a sentencing provision as unconstitutionally vague as applied to the facts of his case. *Chapman v. United States,* 500 U.S. 453, 467, 111 S.Ct. 1919, 1928–29, 114 L.Ed.2d 524 (1991).

■ Sentencing guideline § 2F1.1 provides that the base offense level for offenses involving fraud or deceit is 6; however, if the "loss" exceeds $2,000, the offense level is increased as defined in the statute. The application notes to § 2F1.1 define loss as follows: "loss is the value of the money, property, or services unlawfully taken.... [I]f an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1 comment. (n. 7).

Defendant claims that the definition of "loss" in § 2F1.1 comment. (n. 7) conflicts with the ordinary understanding of the term and that it thereby fails to adequately inform a person of reasonable intelligence as to the conduct proscribed. We disagree.

The definition of "loss" set out in the application notes to § 2F1.1 states with sufficient clarity the consequences of violating the criminal statute in question. It makes sufficiently clear to a person of ordinary intelligence that a defendant found guilty of committing a federal offense involving fraud or deceit will be held accountable for the intended loss, if that amount can be determined and if it is greater than the actual loss.

Defendant successfully stole $1,000 from the First Interstate Bank. He accomplished this by causing two fraudulent checks totalling $3,000 to be deposited into Mrs. Jones' checking account. Defendant attempted to use Mrs. Jones' ATM card to withdraw another $500, but this transaction was blocked because Mrs. Jones had reported her card as stolen. Thus, the amount of "actual loss" was $1,000.

The "intended loss" was $3,000, the total amount of the two checks that defendant caused to be deposited into Mrs. Jones' account. Because the "intended loss" was reasonably ascertainable and was greater than the "actual loss," the "loss," for sentencing purposes, was the "intended loss" of $3,000.

Applying § 2F1.1 comment. (n. 7) to defendant, it was clear that defendant would be held accountable for the intended loss of $3,000. Therefore, it was also clear that defendant would be held responsible for a loss exceeding $2,000 and that his offense level would be calculated under § 2F1.1(b)(1)(B).

Because U.S.S.G. § 2F1.1 is not vague as applied to defendant, defendant's constitutional challenge fails.

### CONCLUSION

Defendant's conviction and sentence are affirmed.

AFFIRMED.