**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4037

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

REGGIE ANDRE BECKTON,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. W. Earl Britt, Senior District Judge. (7:11-cr-00061-BR-1)

Argued: December 12, 2013          Decided: January 21, 2014

Before MOTZ, KEENAN, and THACKER, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Keenan and Judge Thacker joined.

**ARGUED:** Richard Croutharmel, Raleigh, North Carolina, for Appellant. Kristine L. Fritz, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

A jury convicted Reggie Andre Beckton of two counts of bank robbery in violation of 18 U.S.C. § 2113(a). Beckton appeals, contending that the district court abused its discretion in refusing to permit him to testify in narrative form, and erred in forcing him to choose between his right to testify in his own defense and his right to represent himself. For the reasons that follow, we affirm.

I.

In May 2011, a grand jury indicted Beckton on two counts of robbery of federally insured banks in Wilmington, North Carolina. A year later, after a two-day trial, a jury convicted him on both counts.

In the months leading up to Beckton's trial, the district court appointed three different public defenders to represent him. Because Beckton alleged conflicts of interest and personality with the first lawyer and made crude sexual remarks to the second, the court permitted each of them to withdraw.

A week before trial, Beckton made an oral motion to disqualify his third court-appointed attorney, Thomas Manning. The district court denied the motion after determining that Beckton's objections to Manning did not constitute a conflict of interest warranting appointment of a fourth public defender.

2

The court also denied Beckton's eleventh-hour request to postpone his trial. Rather than proceed with Manning as his lawyer, Beckton stated that he wanted to represent himself at trial. The court acknowledged that Beckton had the right to appear pro se, but strongly cautioned him against doing so. Explaining that Beckton would be bound by the same rules of evidence and procedure as trained lawyers, the court advised Beckton that self-representation was not in his best interest. When Beckton insisted, the court permitted him to proceed pro se, with Manning serving as standby counsel.

On the first day of trial, the court again warned Beckton about the inadvisability of appearing pro se. But Beckton responded that he was "confident about [his] decision." The court then reviewed the basics of courtroom procedure for Beckton's benefit, stressing that Beckton needed to "follow all of th[e] rules," and warning him that "outbursts or comments addressed to the jury or to the [c]ourt are not permitted by the rules and w[ould] not be tolerated."

The court's warnings went unheeded. Beckton repeatedly sought to present to the jury inadmissible evidence and improper arguments. Indeed, in the course of his opening statement alone, he impugned the honesty of the prosecutor; claimed that the State charges against him, based on the "same evidence" about to be put to the jury, had been dismissed "for a reason";

3

and argued -- after repeatedly asserting to the district court his desire to appear pro se -- that he had been denied his constitutional right to counsel.

At the close of the prosecution's case, Beckton indicated that he wished to take the stand in his own defense. Without the jury present, the court advised Beckton that of course he could do so, but if he did, he would not be permitted to present narrative testimony. Instead, like all other witnesses, Beckton would have to proceed in question-answer form so opposing counsel could object to a question before it was answered.

In response, Beckton proposed that he draft questions that Manning, his standby counsel, would ask him. The court rejected this plan, stating that Beckton could not "have it both ways." The court explained: Either Manning would assume control of the case and question Beckton, or Beckton would retain control and present his testimony by questioning himself. Beckton could not, however, both represent himself and have standby counsel pose questions to him. Beckton opted to continue pro se and question himself. When the jury returned, the court explained:

> [The defendant will] have to ask himself a question and then answer the question, and the reason for that is the evidence is presented in a question-and-answer format. It allows the opposing party to object to the question because it may be an improper thing for the jury's consideration -- you've seen that throughout this trial -- so obviously the defendant is not allowed to do any different from any other witness. He can't just get up on the witness stand or where he

4

is now and make a narrative statement to you -- he can't do that.  So it may be a little awkward, but we'll get through it.

Beckton then began to testify, but did so in narrative form.  The court stopped him and provided sample questions he might ask.  When Beckton replied that he was given only a few days to prepare his case and demanded to know why he had to "keep quiet about this corruption," the court asked the jury to leave the room.

A lengthy discussion ensued.  Ultimately, the court asked Beckton:  "Do I have your assurance that if I bring the jury back that . . . [you will] ask the question and then give the government an opportunity to object and then, depending on my ruling, answer the question?"  Beckton reluctantly agreed, and the court reconvened the jury.  But when Beckton again began to testify in narrative form and accused the court of "favor[ing] one party," the court removed the jury.  The court then presented Beckton with the choice of continuing to represent himself -- without testifying on his own behalf -- or allowing Manning to assume control of the case and direct his testimony. Beckton responded that he "definitely" did not want Manning to represent him.  The court confirmed that Beckton had no other witnesses to call, marked the evidence closed, and recalled the jury for closing arguments.  The following day, the jury

convicted Beckton on both counts of bank robbery. Beckton timely noted this appeal.

## II.

Beckton argues that the district court abused its discretion in refusing to allow him to testify in narrative form. He maintains that the court's requirement that he proceed in question-answer format "served only to make [him] appear schizophrenic" and damaged his credibility with the jury. Appellant's Br. at 6, 9.

We review for abuse of discretion a district court's rulings on matters of trial management. See United States v. Woods, 710 F.3d 195, 200 (4th Cir. 2013). Trial management includes "such concerns as whether testimony shall be in the form of a free narrative or responses to specific questions." Fed. R. Evid. 611 advisory committee's note. District courts enjoy broad latitude in this realm, because "[q]uestions of trial management are quintessentially the[ir] province." United States v. Smith, 452 F.3d 323, 332 (4th Cir. 2006); see also Woods, 710 F.3d at 200. So long as restrictions on a defendant's right to testify are not "arbitrary or disproportionate to the purposes they are designed to serve," a district court will not be held to have abused its discretion. Rock v. Arkansas, 483 U.S. 44, 55-56 (1987).

In this case, the district court's refusal to allow Beckton to testify in narrative form was not "arbitrary or disproportionate" to its purpose. As the court explained to both Beckton and the jury, the court simply required Beckton, like all other witnesses, to testify in this manner to assure opposing counsel the opportunity to lodge any objection prior to Beckton's answer. We find this rationale eminently reasonable, particularly given Beckton's repeated attempts during the trial to present inadmissible evidence to the jury. Indeed, the Federal Rules of Evidence direct trial courts to "exercise reasonable control over the mode . . . of examining witnesses and presenting evidence so as to make those procedures effective for determining the truth." Fed. R. Evid. 611(a). This duty is no different for pro se litigants. Rather, like all other litigants, they must comply with substantive and procedural courtroom rules. See Faretta v. California, 422 U.S. 806, 834 n.46 (1975) (explaining that self-representation is not a license to ignore "relevant rules of procedural and substantive law.").

Accordingly, the district court "was well within the proper exercise of [its] discretion" in denying Beckton's "request[] that, as a pro se [litigant], he be permitted to testify in narrative form." Hutter N. Trust v. Door Cnty. Chamber of Commerce, 467 F.2d 1075, 1078 (7th Cir. 1972); cf. United States

7

v. Gallagher, 99 F.3d 329, 332 (9th Cir. 1996) (holding that the district court did not abuse its discretion in "restrict[ing] defendant's right to testify [] when defendant attempted to proceed in a narrative fashion"); see generally United States v. Young, 745 F.2d 733, 761 (2d Cir. 1984) (noting that "a trial judge has broad discretion in deciding whether or not to allow narrative testimony").[*]

To be sure, it may be uncomfortable for a pro se litigant to question himself, and a court could, in its discretion, permit a pro se litigant additional time to formulate questions. But our task is "not to decide whether the court below chose the best, or tidiest, means of effecting the defendant's direct examination." United States v. Nivica, 887 F.2d 1110, 1121 (1st Cir. 1989); see also id. at 1122 (explaining that self-examination "adequately permit[s] a [pro se] defendant to tell

---

[*] At oral argument, counsel for Beckton maintained that the district court's refusal to permit narrative testimony was an abuse of discretion because Beckton "could not get his head around" how to proceed in question-answer form. This argument has no footing in law and no basis in fact. Appearing pro se does not relieve a litigant of his obligation to follow legitimate rules. See Faretta, 422 U.S. at 834 n.46; Woods, 710 F.3d at 200. Beckton, moreover, apparently had the ability to follow the rules when he chose to do so. A high school graduate with an associate's degree in criminal justice and another 400 hours of training through correspondence study, Beckton repeatedly demonstrated his ability to formulate questions appropriate for witness examination when he cross-examined the prosecution's witnesses.

his side of the story"). Rather, we review for abuse of discretion only, and here there was none.

Furthermore, rather than question himself, Beckton had the option of permitting standby counsel to assume control of the case and elicit testimony from him. But Beckton would not consent to this arrangement, insisting instead that he continue to control the defense pro se <u>and</u> that standby counsel question him. As with its denial of Beckton's request to testify in narrative form, the district court was well within its discretion in rejecting this proposal. <u>See</u> <u>Nivica</u>, 887 F.3d at 1121-22 (holding that the district court did not abuse its discretion in requiring a pro se defendant to question himself, rather than permitting standby counsel to do so).

Although a criminal defendant has both a right to counsel and a right to represent himself, those rights are "mutually exclusive." <u>United States v. Singleton</u>, 107 F.3d 1091, 1100 (4th Cir. 1997). In other words, a pro se defendant has no right to standby counsel when he chooses to proceed pro se. <u>See</u> <u>id.</u> It follows, therefore, that a district court has "broad discretion to guide what, if any, assistance standby, or advisory, counsel may provide to a defendant conducting his own defense." <u>United States v. Lawrence</u>, 161 F.3d 250, 253 (4th Cir. 1998). And certainly, "[a] defendant does not have a constitutional right to choreograph special appearances by

9

counsel," as Beckton wished to do here.  <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 183 (1984).


### III.

Beckton also argues that the district court impermissibly forced him to choose between his right to represent himself and his right to testify in his own defense when it compelled him to choose between testifying pro se in question-answer form and testifying in response to questions from standby counsel who would then control the case.  We are not persuaded.

As Beckton himself acknowledges, this argument rests on the contention that the district court's requirement that he testify in question-answer format "was not an option authorized by law." Appellant's Br. at 15 ("Beckton assumes he has established that questioning himself using a question-and-answer format was an arbitrary and disproportionate restriction on his right to testify.").  As we have explained, however, this restriction was well within the district court's discretion.  Beckton was free to testify pro se in his own defense; he simply could not do so in narrative form.

Beckton maintains that <u>United States v. Midgett</u>, 342 F.3d 321 (4th Cir. 2003), lends him support.  In <u>Midgett</u>, the defendant sought to provide testimony his lawyer believed to be false.  Although Midgett's lawyer was not certain that Midgett

10

intended to perjure himself, the lawyer nonetheless sought to withdraw his representation. Midgett, 342 F.3d at 323. Instead of permitting the lawyer to withdraw, however, the district court "offered Midgett the choice of either acceding to defense counsel's refusal to put him on the stand or representing himself without further assistance from counsel." Id. Midgett reluctantly chose to continue with counsel and forgo his chance to testify. We held that under these circumstances, the district court impermissibly forced Midgett "to choose between two constitutionally protected rights: the right to testify on his own behalf and the right to counsel." Id. at 327.

Midgett is no help to Beckton. Midgett was denied the chance to exercise in tandem two constitutional rights -- the right to testify and the right to assistance of counsel. In this case, by contrast, the district court expressly afforded Beckton the opportunity to simultaneously exercise both constitutional rights he asserted -- the right to testify and the right to represent himself. Beckton lost that opportunity only when he repeatedly defied the court's instruction to use the same question-answer procedure required of all other witnesses. Therefore, unlike Midgett, Beckton was not compelled to choose between two constitutionally protected rights.

11

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.