**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

APR 30 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  17-10433 |
| Plaintiff-Appellant, | D.C. No.<br>2:16-cr-00171-KJM-2 |
| v. | |
| VIRGIL SEVER SANTA, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, District Judge, Presiding

Argued and Submitted December 20, 2018
San Francisco, California

Before:  CALLAHAN, N.R. SMITH, and MURGUIA, Circuit Judges.

The government filed this interlocutory appeal pursuant to 18 U.S.C. § 3731,

challenging the district court's order excluding certain evidence from the

government's case-in-chief in Virgil Santa's pending criminal trial for concealing a

person from arrest in violation of 18 U.S.C. § 1071. We review the district court's

exclusion of evidence for abuse of discretion, *Wagner v. Cty. of Maricopa*, 747

---

\*       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

F.3d 1048, 1052 (9th Cir. 2013), but we review the district court's statutory interpretation de novo, *United States v. Thomsen*, 830 F.3d 1049, 1057 (9th Cir. 2016). Because the government has not demonstrated legal error or an abuse of discretion, we affirm.[1]

1.      The district court correctly interpreted 18 U.S.C. § 3153(c). The statute designates as confidential any "information obtained in the course of performing pretrial services functions in relation to a particular accused[.]" 18 U.S.C. § 3153(c)(1). The information the government seeks in this case—testimony from Taifa Gaskins, the pretrial services officer ("PSO") who was tasked with supervising Santa's wife, Maria, while Maria was on pretrial release—certainly relates to Officer Gaskins's performance of "pretrial services functions in relation to a particular accused." *Id.* Indeed, the government wants Officer Gaskins to testify about her telephone conversation with Santa on the day that Santa had reported Maria's "disappearance" while Maria was on pretrial release under Officer Gaskins's supervision. Officer Gaskins's purpose in initiating this conversation was to obtain information regarding the whereabouts of her supervisee.

---

[1] We grant the government's motion for the Court to take judicial notice of various documents, Dkt. No. 9, because the documents are part of the public record and the district court had access to them. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

2

The government points to the word "obtained" and argues that, because the government only intends to ask Officer Gaskins about statements that she made to Santa, this information was not "obtained" from anywhere. However, Officer Gaskins's knowledge of what she told Santa while she was performing pretrial services functions was undoubtedly "obtained" in the course of performing those functions. After all, she would not have the relevant knowledge if she had not performed the pretrial services functions.

Additionally, even if the government's argument was persuasive, it would merely introduce some ambiguity into the statute's language, making it appropriate to consult other sources. *See Tides v. The Boeing Co.*, 644 F.3d 809, 814 (9th Cir. 2011) ("If the statutory language is ambiguous, . . . then we may refer to legislative history to discern congressional intent."). The legislative history of the statute bolsters the district court's conclusion that the information the government seeks in this case falls within § 3153's definition of confidential information. Section 3153 was enacted as part of the Pretrial Services Act of 1982, Pub. L. No. 97–267, 96 Stat 1136, and the confidentiality protection was included to "promote candor and truthfulness by the defendant in bail interviews" thereby ensuring "that the court receives the most complete information possible" to make informed pretrial decisions. S. Rep. 97-77, at 12 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2377, 2388; H.R. Conf. Rep. 97-792, at 9 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2393,

3

2395.

If we were to adopt the government's interpretation—that (1) pretrial services information is only confidential with respect to the supervisee but the information can be freely used against third parties, and (2) a PSO's own statements are not confidential, because the PSO does not "obtain" her own statements—this would thwart "the overall purpose and structure of the whole statutory scheme." *United States v. Neal*, 776 F.3d 645, 652 (9th Cir. 2015) (quoting *United States v. Lewis*, 67 F.3d 225, 228–29 (9th Cir. 1995)). Pretrial supervisees and other individuals who provide information to PSOs about those supervisees would be unlikely to provide candid, complete information if the confidentiality protection were so limited.[2]

The district court's interpretation also finds support in internal pretrial-services regulations enacted by the director of the Administrative Office of the U.S. Courts pursuant to § 3153(c)(2). These regulations define confidential "pretrial services information" as:

> any information, whether recorded or not, that is obtained *or developed* by a pretrial services officer in the course of performing pretrial services. Performing pretrial services includes conducting the pretrial services investigation, preparing the pretrial services report, performing any post-release or post-detention investigation, or supervising a defendant released pursuant to chapter 207 of title 18,

---

[2] As the government acknowledges, a PSO will often interview a defendant's family members in preparing the bail report in order to verify the defendant's statements and obtain additional information.

United States Code. Pretrial services information does not include information appearing in the public records of the court.

Guide to Judiciary Policy, Vol. 8, Pt. A, App'x 5A: Confidentiality Regulations, § 2(A) (April 14, 2010) (emphasis added). This definition embraces a broad interpretation of what is confidential, and it focuses on the fact that the PSO was performing pretrial-services functions at the time the information was obtained or developed. In this case, Officer Gaskins's statements were made "in the course of performing pretrial services." Officer Gaskins called Santa, the husband of her supervisee, for the purpose of obtaining or developing information regarding the whereabouts of the supervisee. Officer Gaskins's statements are not part of the public record, as the government contends. Indeed, if they were, there would be no need to call Officer Gaskins to testify.

The limited case law on this issue does not help the government. There is no case addressing whether a PSO's statements to a family member of a supervisee in the course of performing pretrial services constitutes confidential information. *United States v. Hammond*, 666 F.2d 435 (9th Cir. 1982), is distinguishable on a number of grounds. Most importantly, in *Hammond* the PSO was not performing any pretrial-services function when he observed the defendant, did not have an official relationship with the defendant at the time the observations were made, and testified only about those observations. *Id.* at 437–38. *United States v. Gallagher*, 99 F.3d 329 (9th Cir. 1996), is also distinguishable, but it indicates that—contrary

to the government's and the dissent's position—pretrial-services information is confidential regardless of whether the information is sought for use against the supervisee, as long as the information was "obtained in the course of performing pretrial services functions[.]" 18 U.S.C. § 3153(c)(1).[3]

In sum, the district court did not err in interpreting the statute's definition of confidential information to encompass the information the government seeks to use in Santa's case.[4]

2.     The district court did not abuse its discretion in excluding Officer Gaskins's testimony from the government's case-in-chief. Because Officer Gaskins's testimony is confidential information, the government could only use the

---

[3] In *Gallagher*, the defendant sought pretrial services files regarding other defendants in a prior case. 99 F.3d at 332–33. Importantly, the files did not lose their confidential status merely because they were sought for use in a non-supervisee's trial. Indeed, § 3153 itself makes clear that pretrial services information is confidential regardless of the context or the use for which the information is sought. Section 3153(c) creates a blanket assumption that pretrial services information is confidential, allowing the information to be used "*only* for the purposes of a bail determination[,]" unless an exception applies. 18 U.S.C. § 3153(c)(1) (emphasis added).

[4] The dissent suggests that Santa waived any objection to the admission of Officer Gaskins's testimony by offering to waive § 3153's confidentiality protections in district court and by failing to file an answering brief in this appeal. But the protections of § 3153 are not Santa's to waive. PSOs are court officers, and they may disclose confidential pretrial services information only as provided by law and with the court's permission. Moreover, the information sought in this case derives from a PSO's supervision of a different defendant (not Santa). And the lack of an answering brief does not compel us to accept the government's statutory interpretation.

testimony in its case-in-chief if the government could show that an exception was applicable. *See* 18 U.S.C. § 3153(c)(2); Confidentiality Regulations § 5. The only potentially applicable exception is the good-cause exception, but the government did not show good cause in the district court or this Court. The government simply asserts that Officer Gaskins's testimony is essential to its case—despite admitting that the government does not know what Officer Gaskins will testify to, and despite obtaining a grand jury indictment without her testimony.[5] On this record, we find nothing "illogical," "implausible," or factually lacking in the district court's decision to exclude the testimony. *See United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

**AFFIRMED**.

---

[5] We question how the government could certify that Officer Gaskins's testimony is "a substantial proof of a fact material in the proceeding" when the government does not know what the testimony is. 18 U.S.C. § 3731. But this Court has explained that, even when we are skeptical of the government's basis for certification under § 3731, we nonetheless have jurisdiction as long as the certification is properly filed. *See United States v. W.R. Grace*, 526 F.3d 499, 502, 507 (9th Cir. 2008) (en banc).

FILED

APR 30 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CALLAHAN, Circuit Judge, dissenting:

I agree with the majority that this appeal turns on a question of statutory interpretation that we review de novo.  Because, in my view, the district court erred in its interpretation of 18 U.S.C. § 3153(c), I would reverse.

After Maria Santa pleaded guilty to mail fraud and failed to turn herself over to authorities on her surrender date, Virgil Santa called police to report that Maria, his wife, had written a suicide note and disappeared in the night.  As it turned out, Maria's death had been faked, and several months later, Virgil and Maria were seen together by a federal agent.  Criminal charges were filed against both Maria (failure to appear for service of her sentence) and Virgil (harboring a fugitive).

The information sought by the government in Virgil's case is narrow.  It seeks to learn (and to present at trial) only whether Officer Gaskins—the pretrial services officer (PSO) who supervised Maria—told Virgil that an arrest warrant for Maria had been or would be issued.  The governing statute provides in pertinent part that "information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purposes of a bail determination and shall otherwise be confidential."  18 U.S.C. § 3153(c)(1).  It further provides that "[i]nformation made confidential" under the statute is

1

generally inadmissible "on the issue of guilt in a criminal judicial proceeding." 18 U.S.C. § 3153(c)(3).

I agree with the district court that the statutory language is ambiguous on the controlling issue. In my view, the overall purpose, structure, and legislative history of the statute suggest Congress did not intend to make the limited information the government seeks here inadmissible against a non-supervisee like Virgil.

In enacting the Pretrial Services Act of 1982, "Congress's core concern" was the relationship between the PSO and the supervisee. *United States v. Stevens*, 935 F.2d 1380, 1396 (3d Cir. 1991). The Act's confidentiality provision "carries out the purpose of protecting the relationship between the pretrial services officer and the *particular defendant*." H.R. Rep. No. 97-792, at 8 (1982) (Conf. Rep.) (emphasis added). Nothing about the Act or its history suggests Congress had any intentions about the ramifications of a PSO's information gathering as to anyone other than the particular accused. Obviously, without the statute, other than the normal rules of evidence, nothing would prevent information learned by a PSO from being admissible. *Cf. United States v. Griffith*, 385 F.3d 124, 126 (2d Cir. 2004) ("In view of the strong principle favoring admissibility of relevant evidence at trial, we will not read the exception to admissibility in § 3153(c)(3) beyond its plain meaning.").

Although I agree with the majority that Congress was concerned about promoting candor by the defendant in bail interviews, that interest is not implicated by disclosure of the limited information the government seeks here.[1] The apparent concern of a PSO divulging his or her own side of a conversation with another person is that doing so would indirectly reveal the information "obtained" from the other person, thereby undermining the purpose of § 3153(c). But a PSO's giving of notice to a supervisee's spouse of a matter of public record (i.e., the existence of a warrant) is not information "obtained" by the PSO but is more of an *act* on the part of the PSO. Disclosure of such an act does not risk divulging—directly or indirectly—the content of conversations between the PSO and others. I would

---

[1] Promoting candor wasn't Congress's only concern. That interest arose from more fundamental Fifth and Eighth Amendment interests that are likewise not implicated here. *See* S. Rep. No. 97-77, at 2 (1981) (Conf. Rep.); *Pretrial Services Act of 1982: Hearing on H.R. 2841 Before Subcomm. on Crime of the H. Comm. on the Judiciary*, 97th Cong. 89–90 (1981) (statement of Bruce Beaudin, Director, District of Columbia Pretrial Services Agency) ("The general confidentiality provision contemplated the need to have this information available to protect [F]ifth [A]mendment problems. [¶] When you contrast the [F]ifth [A]mendment rights against incrimination against the [E]ighth [A]mendment right to bail, the notion was it's of more importance to have the bail information, than to be able to use information against the defendant later on."). The legislative history also reflects an intent "to ensure that defendants cannot attempt to take advantage of the pretrial services process and then shield themselves behind the guarantee of confidentiality." H.R. Rep. No. 97-792, at 9 (1982) (Conf. Rep.); *see also Pretrial Services Act of 1982: Hearing on H.R. 2841 Before Subcomm. on Crime of the H. Comm. on the Judiciary*, 97th Cong. 90 (1981) (statement of Bruce Beaudin, Director, District of Columbia Pretrial Services Agency) ("Not to have that evidence available in a bail jumping prosecution would be to thwart the statute.").

3

hold that even if the confidentiality provided by the statute can extend to communications with non-supervisees (such as Virgil), whether a PSO informed a non-supervisee of an arrest warrant for the supervisee is not confidential under § 3153(c).

The district court's interpretation of the statute leads to an anomalous result that I seriously doubt Congress intended. Although § 3153(c) generally protects information obtained by a PSO, it contains an exception for a criminal proceeding against the supervised defendant "for a crime committed in the course of obtaining pretrial release or . . . for failure to appear for the criminal judicial proceeding with respect to which pretrial services were provided." 18 U.S.C. § 3153(c)(3). Under this exception, there appears to be no doubt that any information Officer Gaskins learned from speaking with Virgil on the day Maria went missing would have been admissible in the case against Maria for her failure to appear for service of her sentence. I agree with the government that it is illogical to conclude that information about a supervisee's flight is admissible against the supervisee but not admissible against a second defendant who aided and abetted the supervisee's flight. The statute's lack of an express exception for aiders and abettors of a supervisee's flight does not mean Congress intended (or overlooked) this anomaly. Rather, in my view, the statute's omission of any reference to third parties reflects Congress's intent to make information inadmissible only as to the supervisee.

The anomaly created by the district court's interpretation of the statute is further unjustified because Virgil expressly waived any protection over the information the government sought. In the district court, Virgil's counsel stated that Virgil has no objection to the government's requested disclosure and that Virgil "would waive" any protection over the information.[2] So, to recap, the requested information would be admissible against Maria, and Virgil waived any protection (at least for purposes of disclosure) over the information. However broad § 3153(c)'s confidentiality provision, it does not apply to the information sought by the government under the circumstances of this case.

I respectfully dissent.

---

[2] The government sought disclosure "to the parties" of whether Officer Gaskins told Virgil of Maria's arrest warrant. Thus, the only condition given by Virgil's counsel—that Virgil have a representative present for the disclosure—was already part of the government's request. Virgil never retracted that waiver. Indeed, on appeal, Virgil's counsel filed no answering brief, and instead filed only a statement indicating that Virgil "takes no position" on the government's appeal.